No. 20,319.

THE HARVESTER BUILDING COMPANY, *Appellee*, v. J. O. HART-
LEY et al., as the Board of County Commissioners of the
County of Saline et al., *Appellants*.

SYLLABUS BY THE COURT.

TAXATION — *Listing Capital Stock of Certain Corporations for Tax-
ation—Statute Construed.* The statute providing that no person shall
be required to list for taxation any portion of the capital stock of
certain corporations, but that their agents shall list "the full amount
of stock paid in and remaining as capital stock," which shall be taxed
at its true value, as other personal property, a deduction being first
made of the amount of stock invested in specific property which is
given to the assessors for taxation, is interpreted to mean that taxes
are to be paid upon the actual value of the shares of stock outstand-
ing, less the amounts assessed against specific property, and that this
rule applies even where the corporation is engaged in no other busi-
ness than in renting real estate which it has procured by the ex-
penditure of the whole amount paid in by stockholders, and the stock
is appraised at a greater value than the realty.

Appeal from Saline district court; DALLAS GROVER, judge.
Opinion filed October 7, 1916. Reversed.

*S. M. Brewster,* attorney-general, *S. N. Hawkes, John L.
Hunt,* assistants attorney-general, and *Leonard A. Hamner,*
county attorney, for the appellants.

*Z. C. Millikin,* of Salina, for the appellee.

The opinion of the court was delivered by

MASON, J.: The taxing officers of Saline county assessed
for taxation the capital stock of the Harvester Building Com-
pany, a Kansas corporation having its principal place of busi-
ness in that county, at $14,500. This sum was arrived at by
appraising the corporation's stock at $60,000, which was the
amount of its authorized and paid in capital, and deducting
therefrom the assessed value of its real estate in the county,
$45,500. The company obtained a judgment enjoining the
collection of the tax based on this assessment, and the county
officers appeal.

It was shown that the entire capital of the corporation had
been used in the purchase of real estate, and that its business

consisted solely in renting that property. The company contends that in paying taxes on the realty it had made its full contribution to the cost of government; that as it owned no other property it had nothing upon which a further tax ought to be imposed; that the additional assessment was in violation of the statute and of the rule of equality and uniformity in taxation. The statute invoked reads as follows, the phrases particularly relied on being italicized:

"That no person shall be required to include in the list of personal property any portion of the capital stock of any company or corporation which is required to be listed by such company or corporation; but all incorporated companies, except such companies and corporations as are specially provided for by statute, shall be required to list by their designated agent in the township or state [city] where the principal office of said company is kept, *the full amount of stock paid in and remaining as capital stock*, at its true value in money, and such stock shall be taxed as other personal property: *Provided,* That such *amount of stock* of such companies as may be invested in real or personal property which, at the time of listing said capital stock, shall be particularly specified and given to the assessors for taxation, shall be deducted from the amount of said capital stock." (Gen. Stat. 1909, § 9229.)

It is urged that as the entire amount paid in by stockholders has been expended for real estate, the deduction of the amount of stock so invested from the amount paid in will leave nothing whatever to be listed and taxed; that the statute undertakes to impose a tax upon the capital stock, which is the property of the corporation, and not upon the shares of stock, which are owned by its individual members. The argument is plausible, for this distinction between the phrases "capital stock" and "shares of stock," as used in taxation statutes, is generally recognized. (1 Words & Phrases, p. 965; 10 Cyc. 364, 365; 2 Cook on Corporations, 7th ed., § 563; *Powers v. Detroit & Grand Haven Ry.*, 201 U. S. 543, 559.) As suggested, however, in the case last cited, "the terms 'share,' 'stock,' 'capital,' 'capital stock' are of frequent and not uniform use, and we have often to turn to the context to see what is intended by its use in a particular case." (p. 559. See, also, 1 Cook on Corporations, 7th ed., § 8.) The obvious purpose of the statute under consideration is in effect to require the corporation to list for taxation, and pay the taxes upon, the property which otherwise the shareholder would have to return and answer for. The law undertakes to reach the prop-

erty of the individual through the organization. This result is ordinarily accomplished, as in the statute relating to the taxation of banks (Gen. Stat. 1909, § 9298), by providing in so many words that the assessed value of any real estate shall be deducted from the original assessment of the capital stock; but the same general purpose is evident here. The section under consideration begins by exempting individuals from including in their lists of personal property any portion of the "capital stock" of a corporation. Clearly the quoted phrase is not used with technical accuracy, since the stockholder would in any event list only his own shares, and no part of the "capital stock" of the company. The term "stock" having been used in the introductory clause in a somewhat colloquial sense, it is natural and proper to give it a like interpretation where it occurs later in the same sentence. In view of these considerations we think the fair meaning of the statute is that the corporation shall determine the value of its stock (that is of all the shares of stock issued and outstanding, which will necessarily be the value of its possessions and rights, including franchises and good will, in view of the use made of its property and the business it does—a value corresponding to its earning capacity) and deduct therefrom the assessed value of any specific property in the county which is separately listed, returning the difference as the additional amount for which it is taxable, subject to review by the proper officers. This method of applying the law is that used by the state tax commissioners, with the approval of the court, in *Gas Co. v. Spaeth,* 83 Kan. 191, 109 Pac. 785.

Where the entire capital stock of a corporation has been invested in a piece of real estate, and it has no other business than renting that property, it would seem that the value of its stock in the sense indicated would be nearly or exactly the same as that of its realty. The values, however, would not necessarily be precisely the same. The demand for shares of the corporate stock might be better than that for real estate, causing a difference in market value. The advantages incident to doing business as a corporation might enable the owner to realize an income from the property larger than could otherwise be obtained, or could be expected upon the basis of its mere market

value. (*People's Warehouse Co. v. Yazoo City*, 97 Miss. 500, 52 South. 481, and cases there cited.)

No inequality or injustice results from the interpretation adopted. The holder of stock in the corporation is the person ultimately interested in the matter. He ought, in fairness, to pay a tax in proportion to its actual value. The law in effect requires this and nothing more. If the corporation puts a just estimate upon the value of his stock (with that of others) and he is required to pay (through the corporation) a tax based upon that amount, less the assessed value of property upon which the corporation is otherwise taxed, he can suffer no wrong thereby. If the physical property is overvalued, he is compensated by the consequent reduction in the tax on the stock; if the physical property is undervalued, no hardship ensues, since he gains thereby what he loses in the increased stock assessment. Compensation is automatically provided, the net result being always the same. Of a situation somewhat similar to that here presented it has been said: "In limiting the reduction to the assessed value, no possible injustice is done the bank. In paying taxes on the assessed value of its real estate, and in addition thereto taxes on the aggregate value of its real estate and capital, surplus and undivided profits, less the assessed value of the real estate, a bank pays taxes on nothing more than it owns. If allowed to deduct a sum larger than the assessed value of the real estate, as an actual value, it would pay on only a part of what it owns." (*State ex. rel. Dillon v. Graybeal*, 60 W. Va. 357, 370, 55 S. E. 398. See, also, *Valley Invst. Co. v. Board of Review*, 152 Iowa, 84, 131 N. W. 669.) While the statutes in these cases are not closely similar to that here involved, the decisions have a bearing upon the question of the fairness of the plan of assessment adopted.

It is true that in the present case the difference between the assessed value of the real estate ($45,500) and the assessed value of the stock ($60,000) seems larger than would naturally be expected, but as already suggested this affords no just ground of complaint unless the latter is too large. And of course a mere error of judgment on the part of the officers charged with the assessment can not be remedied by the courts.

The petition alleged that the assessor acted arbitrarily and in bad faith, and the plaintiff contends that his own testimony afforded a basis for a finding, which the trial court must be deemed to have made, that the allegation was true. The assessor (that is, the deputy who acted in this matter) testified that he based his valuation on statements of the treasurer of the company, who told him that dividends were paid of six per cent, based on the capitalization of $60,000, and that if any stock were sold it would bring par. The company's treasurer testified that "*if*" the real estate were worth what it was assessed ($45,500), the stock was worth about seventy cents, because that was all the property the corporation had; that the property had cost $60,000 two years before, and was no less valuable than when acquired, except for natural depreciation and wear, and that it was rented for $420 a month. No special findings were made, but it seems clear that the judgment was not grounded upon the theory of bad faith on the part of the taxing officers. The court held that no tax whatever could be imposed upon the stock, excepting with regard to a small amount of money on hand, reference to which has hitherto been omitted for the sake of simplicity in statement. That conclusion seems obviously to have been based upon the interpretation of the statute which has been contended for by the plaintiff, and which this court for the reasons already stated is unable to accept.

The judgment is reversed and the cause remanded with directions to render judgment for the defendants.