No. 21,603.

THE FIRST NATIONAL BANK OF JUNCTION CITY, *Plaintiff*, v. RODGER MOON et al., as Officials of Geary County; SAMUEL T. HOWE et al., as Tax Commissioners of the State of Kansas et al., *Defendants*.

No. 21,218.

THE INTERSTATE MORTGAGE TRUST COMPANY, *Appellant*, v. FAIRFAX BARNES, as County Clerk, and NINA WOODFORD, as County Treasurer, etc., *Appellees*.

SYLLABUS BY THE COURT.

1. TAXATION—*Banks and Loan and Investment Companies—Tax on Shares of Stock—Statute.* The tax contemplated by section 11236 of the General Statutes of 1915, relating to taxation of national banks, state banks, and loan or investment companies, is a tax on shares of stock in the hands of stockholders, and not a tax on capital stock or assets, the property of the corporation.

2. SAME—*Shares of Stock—Assessable at True Value.* Shares of stock are to be assessed at their true value, which may or may not coincide with their bookkeeping value.

3. SAME—*Proper Deductions from Value of Shares of Stock.* The assessed value of real estate generally, and not merely the banking house or office building, and real estate representing an investment of original capital stock, may be deducted from the value of shares of stock.

Bank v. Geary County.

4. SAME—*No Deductions for Real Estate Owned in Other States.* No deduction may be made for real estate in other states owned by state banks, national banks, or loan or investment companies.

5. SAME—*Limit of Deductions from Value of Shares of Stock.* In the case of state banks, the deduction on account of real estate necessary for the convenient transaction of business, including furniture and fixtures, may not exceed the value of the real estate which the bank has capacity to hold for that purpose.

6. SAME. The limitation stated in the preceding paragraph does not apply to national banks or loan or investment companies.

7. SAME—*Improper Deduction from Assessed Value of Shares of Stock.* No deduction from the assessed value of shares of stock of banks can be made on account of real estate acquired in the ordinary transaction of business, which is retained beyond the periods limited by the state and federal laws for holding such real estate.

8. SAME—*Classification of Banks with Loan and Investment Companies Reasonable.* The classification of loan or investment companies with state and national banks' for purposes of taxation is a reasonable classification, which does not infringe the constitutional requirement that taxes shall be assessed and levied at a uniform and equal rate.

9. SAME—*Rule Prohibiting Deduction of Value of Real Estate in Foreign State—No Infringement of Constitution.* The prohibition upon deducting from the value of shares of stock of state banks and loan or investment companies the value of real estate situated in a foreign state does not infringe the fourteenth amendment to the constitution of the United States.

10. SAME—*Not Double Taxation.* The prohibition does not result in double taxation by this state.

11. SAME—*State Tax Commission—Assessments Properly Made.* Conduct of the state tax commission in arriving at the true value of shares of stock, not fraudulent or so arbitrary or capricious as to amount to fraud, is not subject to review by the courts.

Case No. 21,603. Original proceeding in mandamus. Opinion filed January 12, 1918. Writ allowed in part and denied in part.

*J. V. Humphrey,* and *Arthur S. Humphrey,* both of Junction City, for the plaintiff.

*S. M. Brewster,* attorney-general, *S. N. Hawkes, John L. Hunt,* assistants attorney-general; *W. E. Ziegler,* of Coffeyville, *W. N. Banks, O. L. O'Brien,* both of Independence, *Donald Muir,* of Anthony, *L. B. Morris,* of Junction City, *H. L. McCune, R. B. Caldwell,* and *Blatchford Downing,* all of Kansas City, Mo., for the defendants.

Case No. 21,218. Appeal from Labette district court; ELMER C. CLARK, judge. Opinion · filed January 12, 1918. Affirmed.

*E. L. Burton, George F. Burton,* and *W. A. Disch,* all, of Parsons, for the appellant.

*C. E. Pile,* and *L. E. Goodrich,* both of Parsons, for the appellees.

The opinion of the court was delivered by

BURCH, J.: These actions involve controversies between state banks, national banks, and a loan company, on one side, and taxing officials on the other. The controversies relate to the assessment of shares of stock of the institutions named, and the deductions to be made from such assessments on account of investments in real estate in Kansas and other states. With the exception of some minor matters, the questions presented must be solved by an interpretation of the tax laws of the state, considered in connection with other laws, including statutes of the United States. The questions are of such character that they may be apprehended without a résumé of the pleadings. An abstract of the pertinent laws is appended to this opinion. For convenience in reference, numbers in brackets have been prefixed to each subdivision of section 11236 of the General Statutes of 1915 which relates to a distinct subject. This section will be designated, for brevity, the tax law.

The first question to be determined is: What is the precise subject of taxation reached by the tax law?

The first subdivision of the tax law provides that "stockholders" of state and national banks and of loan or investment companies shall be assessed and taxed "on the true value of their shares of stock." The second subdivision requires a return to be made, by a designated officer of the corporation, of "the amount and value of stock" held by each stockholder, together with "the value of any undivided profit or surplus." The third subdivision requires the corporation to pay the tax "assessed upon said stock and undivided profits or surplus," and gives the bank a "lien thereon," but reserves a remedy against the stockholder. The fourth subdivision authorizes a deduction on account of "capital stock" invested in real estate, to be

Bank v. Geary County.

made "from the original assessment of the paid-up capital
stock." The fifth subdivision provides that bank stock and in-
vestment or loan company "stock or capital" shall not be as-
sessed at a higher rate than other property. The sixth sub-
division makes the act applicable to certain mutual insurance
companies. The seventh subdivision provides that the assets,
moneys, and credits of mutual insurance companies shall be
subject to assessment and taxation. The first five subdivisions
refer to state banks, national banks, and loan companies. The
sixth and seventh subdivisions refer to mutual insurance com-
panies, and in what follows, the sixth and seventh subdivisions
will be omitted from consideration, unless specifically men-
tioned.

It is not strange that this Joseph's coat piece of legislation
should be confusing to taxing officers, especially those to whom
the invisible, intangible entity called a corporation is still an
enigma, and should be confusing to corporate officers and stock-
holders. It affords fine opportunity for legal dialectics and dis-
cursion. The fact is, the statute was the product of necessity,
which limited the subject of taxation to shares of stock as the
property of stockholders.

In the case of state banks, capital stock is the fund contrib-
uted by the stockholders to start the bank. It must not be less
than a prescribed sum. It must be fully subscribed before a
charter can be taken out, and the subscriptions must be paid
in cash before a certificate authorizing the bank to engage in
business can be obtained from the bank commissioner. The
fund is divided into shares of one hundred dollars each. Each
stockholder's subscription is of a certain number of shares,
and certificates, called certificates of stock, are issued to stock-
holders to evidence ownership of their shares. The original
fund, called capital stock, can neither be increased nor dimin-
ished, except under prescribed conditions and according to pre-
scribed formalities. When paid in by the stockholders, the
money belongs to the bank. On the books of the bank the cash
account is debited, and the money is the property of the corpo-
ration, the same as if the corporation were a natural person.
The bank is managed and controlled by a board of directors,
and the stockholders have no voice in its business affairs.

22—102 Kan.

When the corporation begins doing business it has no money or property except the cash paid in on subscriptions to capital stock. The corporation buys a banking house with some of the money. The banking house is not capital stock. It is simply property purchased with money of the bank. The corporation proceeds to do a general banking business, and acquires notes and other instruments representing loans, acquires bonds, stocks, mortgages and other securities, and acquires real estate and various other kinds of property. All this property belongs to the bank. The stockholders have no proprietorship in it or proprietary dominion over it. The property thus acquired, credits of various kinds, and cash and cash items in the vault, constitute the bank's assets or resources, sometimes spoken of in an economic way as its capital. They have all been acquired through the uses to which the original capital stock and its products have been put, but they are not capital stock. Capital stock is still and always the original fund subscribed by the stockholders at the inception of the organization, and stands as a liability on the books of the bank, instead of as an asset. The bank makes some money. Profits belong to the corporation, and can be disposed of by the board of directors only; not by the stockholders. The stockholders have no property in profits until the directors have declared a dividend. In order to create a fund to meet unforeseen contingencies and unusual losses, the bank does not distribute all the profits among the stockholders, but retains some of them. The fund so created is designated surplus. Profits not set aside as surplus or distributed in dividends are undivided profits. Surplus and undivided profits are the property of the bank. As the names indicate, they are not capital stock, but are something besides capital stock. After paying for the number of shares of capital stock which he has subscribed, the stockholder's right to claim money or property from the bank and its business is limited to sharing in such dividends as may be declared by the board of directors out of profits, and to sharing in the distribution of the assets of the bank when it winds up its affairs, after depositors and all other creditors have been satisfied. This right attaches to and is proportionate to the number of shares of capital stock which the stockholder owns. His shares are his personal property, and they may be bought and sold as other personal prop-

Bank v. Geary County.

erty, by the observance of certain formalities. They may be willed away, and in case of intestacy pass to his administrator as a part of his personal estate. He cannot sell or will away any part of the money or property which belongs to the corporation.

The foregoing explanation will serve quite as well for national banks and loan companies as for state banks. It is as simple and as elementary as it can be made, so much so that it seems extraneous to a judicial opinion. It may be helpful, however, to inexperienced assessors, county clerks, and county boards of equalization, and perhaps others. There are indications that the legislative mind was not perfectly clear on the subject.

The state was admitted into the Union before the national bank act was passed by congress. Article 11 of the state constitution was devoted to finance and taxation, and section 2 of that article provided that the property of a bank, its notes, bills discounted or purchased, moneys loaned, and all other property, effects, or dues of every description, without deduction, should be taxed. The first tax law was framed according to that theory. (Laws 1860, ch. 114, Compiled Laws 1862, ch. 197.) The exigencies of the civil war led to the creation of the national banking system. The purpose was to supply a market for government bonds and provide a safe and elastic system of national currency issued on the security of such bonds. Government bonds were not taxable, the national banks were federal agencies, exempt from taxation except so far as congress waived the exemption, and the first act, passed on February 25, 1863, contained no provision for state taxation. Such a provision was added by congress in 1864, and appears as section 5219 of the Revised Statutes of the United States. Concerning this act the supreme court of the United States has said (italics employed for emphasis):

"This section, then, of the revised statutes is the measure of the power of a state to tax national banks, their property or their franchises. By its unambiguous provisions the power is confined to a taxation of *the shares of stock in the names of the shareholders* and to an assessment of *the real estate of the bank*. Any state tax therefore which is in excess of and not in conformity to these requirements is void." (*Owensboro National Bank v. Owensboro,* 173 U. S. 664, 669.)

The result of the congressional legislation was to prevent

application to national banks of state legislation taxing bank property other than real estate. In New York state banks were taxed on their capital. An act was passed taxing shares of national bank stock to the stockholders. The act did not, however, tax the shares of state banks to the stockholders. The act was held void because it discriminated in favor of stockholders of state banks, notwithstanding the fact that state banks were taxed on their capital. In the opinion the supreme court of the United States said:

"The banks of the state are taxed upon their capital; and although the act provides that the tax on the shares of the national banks shall not exceed the par value, yet, inasmuch as the capital of the state banks may consist of the bonds of the United States, which are exempt from state taxation, it is easy to see that this tax on the capital is not an equivalent for a tax on the shares of the stockholders.

. . . . . . . . . .

"The tax on the shares is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal; and within the powers conferred upon it by the charter, and for the purposes for which it was created, can deal with the corporate property as absolutely as a private individual can deal with his own. This is familiar law, and will be found in every work that may be opened on the subject of corporations. A striking exemplification may be seen in the case of Queen v. Arnoud [9 Adolphus & Ellis, New Series, 806]. The question related to the registry of a ship owned by a corporation. Lord Denman observed: 'It appears to me that the British corporation is, as such, the sole owner of the ship. The individual members of the corporation are no doubt interested in one sense in the property of the corporation, as they may derive individual benefits from its increase, or loss from its decrease; but in no legal sense are the individual members the owners.'

"The interest of the shareholder entitles him to participate in the net profits earned by the bank in the employment of its capital, during the existence of its charter, in proportion to the number of his shares; and, upon its dissolution or termination, to his proportion of the property that may remain of the corporation after the payment of its debts. This is a distinct independent interest or property, held by the shareholder like any other property that may belong to him. Now, it is this interest which the act of congress has left subject to taxation by the states, under the limitations prescribed." (Van Allen v. The Assessors, 70 U. S. [3 Wall.] 573, 581, 583, 584.)

The result in Kansas was that the legislature was obliged to conform the bank-tax law to the federal law, in order to avoid taxing the state's own banks out of existence. They could not compete with national banks, if stockholders were

taxed on the full value of their shares, and, in addition, the bank were taxed on all its property. Full equality between state and national banks was finally accomplished by the tax-law revision of 1876. (Laws 1876, ch. 34, § 22.) The law was given its present form by the inclusion of loan companies and certain mutual insurance companies in 1891. (Laws 1891, ch. 84, § 1.)

The distinction between the class of property owned by stockholders known as shares of stock, and the class of property owned by the corporation called capital stock, and sometimes called capital, has always been recognized and enforced by the supreme court of the United States. Its decisions are authoritative because of the legislative purpose to conform the tax law to the requirements of the federal law. A specious argument frequently advanced is that the shares of stock represent the capital stock, which in turn represents the property of the corporation, so that a tax return of shares by the stockholders, or the corporation for them, and a return of capital stock or property by the corporation, accomplish the same end, but by different methods. The fallacy of this argument is exposed by the decision in the case of *People v. The Commissioners,* 71 U. S. (4 Wall.) 244. The capital of a national bank consisted of $100,000, which was all invested in United States securities, exempt from taxation. In assessing the shares of stock to stockholders the assessor valued them at par, and made no deduction on account of the exempt character of the securities in which the bank had invested all its capital. A stockholder contested the assessment. The assessment was sustained on the authority of the decision in the case of *Van Allen v. The Assessors,* supra. If the bank itself had been taxed the exemption would have been allowed.

In the case of *Bank of Commerce v. Tennessee,* 161 U. S. 134, the ownership of surplus was considered. The charter of a state bank provided for a tax on each share of capital stock, in lieu of all other taxes. A subsequent statute undertook to tax the bank's surplus. It was contended the statute violated the obligation of the contract expressed in the charter. In the opinion it was said:

"In *Tennessee v. Whitworth,* 117 U. S. 129, at page 136, Mr. Chief Justice Waite, in delivering the opinion of the court, says: 'That in cor-

porations four elements of taxable value are sometimes found. First, the franchise; second, the capital stock in the hands of the corporation; third, the corporate property; and, fourth, the shares of capital stock in the hands of the individual stockholders.'

"The surplus belonging to this bank is 'corporate property,' and is distinct from the capital stock in the hands of the corporation. . . . Recognizing, as we do, that there is a different property in that which is described as capital stock from that which is described as corporate property other than capital stock, and remembering the necessity there is for a clear expression of the intention to exempt before the exemption will be granted, we must hold that the surplus has not been granted exemption by the clause contained in the charter under discussion. The very name of surplus implies a difference. There is capital stock, and there is a surplus over, above and beyond the capital stock, which surplus is the property of the bank until it is divided among stockholders." (*Bank of Commerce v. Tennessee*, 161 U. S. 134, 147.)

Considered in the light of its origin, and of its clear purpose to place state banks and loan companies on the same basis for taxation as national banks, the tax law becomes easy of interpretation, notwithstanding the loose phraseology employed. It would not be possible to levy a valid tax on the capital stock, the surplus, the undivided profits, or other property of a national bank, because of the restrictions contained in the federal law. Consequently an intention to tax property of that character to state banks or loan companies cannot be imputed to the legislature. Neither may stockholders be taxed on property which belongs to the bank and not to them, and the result is, the subject of taxation stated in the first subdivision of the tax law is, shares of stock belonging to stockholders.

The purpose of the list of stockholders required by the second subdivision of the tax law is obvious. The stockholders are the persons taxed; not the bank or loan company. The statement of the amount and value of stock held by each stockholder, together with the value of any undivided profits or surplus, is designed to facilitate the work of the taxing officers. The third subdivision makes the bank or loan company a responsible agent for the collection of the taxes due from the shareholders. The "tax assessed upon said stock and undivided profits or surplus," which the corporation is required to pay, is not any tax on stock, undivided profits, or surplus, because no such tax has been assessed. The tax is a tax on shares of stock, the personal property of the stockholders. The "lien

Bank v. Geary County.

thereon" given the corporation to reimburse it for payment of the tax is not a lien on stock, surplus, and undivided profits. The corporation already owns these in its own right. The lien is on the property of the shareholders—their shares of stock. This method of collecting taxes due from stockholders was discussed in the case of *National Bank v. Commonwealth*, 76 U. S. (9 Wall.) 353, where the court said:

"A very nice criticism of the proviso to the 41st section of the national bank act, which permits the states to tax the shares of such bank, is made to us to show that the tax must be collected of the shareholder directly, and that the mode we have been considering is by implication forbidden. But we are of opinion that while congress intended to limit state taxation to the shares of the bank, as distinguished from its capital, and to provide against a discrimination in taxing such bank shares unfavorable to them, as compared with the shares of other corporations, and with other moneyed capital, it did not intend to prescribe to the states the mode in which the tax should be collected. The mode under consideration is the one which congress itself has adopted in collecting its tax on dividends, and on the income arising from bonds of corporations. It is the only mode which, certainly and without loss, secures the payment of the tax on all the shares, resident or nonresident; and, as we have already stated, it is the mode which experience has justified in the New England states as the most convenient and proper, in regard to the numerous wealthy corporations of those states. It is not to be readily inferred, therefore, that congress intended to prohibit this mode of collecting a tax which they expressly permitted the states to levy." (p. 363.)

The next question is: By what standard shall stockholders be assessed and taxed on their shares of stock?

The first subdivision of the tax law states the standard— "the true value." The president, cashier or managing officer of the corporation submits a list of the stockholders. Annexed to the names is a statement of the amount of stock, number of shares and value of the stock held by each. That accounts for the capital stock. A further statement is made of the amount carried to surplus and the amount of undivided profits, shown by the books of the bank. If capital stock should be $100,000, surplus $45,000, and undivided profits $5,000, the book value of each share of $100 would be $150. That might or might not be the true value. There may be two banks on opposite sides of the same street, with the same capital stock and the same surplus. The true value of a share of the stock of one may be $200, while the true value of a share of stock of the other may be less than par. The value of all tangible assets of

every kind, including the value of all real estate owned, should be considered. Intangible elements of value—rights, privileges, good will, capacity and opportunity to achieve financial success, results of past business and the outlook for the future—should be considered. In a word, the entire potentiality of the corporation to profit by the exercise of its corporate franchises should be taken into account.

The next question is: From what assessed value shall a deduction be made on account of investments in real estate?

The tax law says the deduction shall be "from the original assessment of the paid-up capital stock of said corporation." This is an impossibility. No assessment, original or otherwise, of the paid-up capital stock is provided for, and no such assessment is made. For the reasons stated above, the meaning is, the deduction is to be made from the total valuation of all the shares of stock belonging to all the stockholders. To ascertain the personal liability of an individual stockholder, the remainder should be divided by the whole number of shares, and the quotient multiplied by the number of shares which he owns.

The next question is: What deductions on account of investments in real estate may be made? This is a compound question.

The tax law specifies real estate held by fee-simple title. This means full and unconditional ownership in fact. Should real estate be taken in satisfaction of a debt, it would make no difference that title was taken, for convenience, in the name of some officer or employee of the corporation. If a deed should be given the corporation in payment of a debt, it would make no difference that the deed was withheld from record, and the debt carried on the books of the bank as an obligation of the debtor. The real estate would belong to the bank by title in fee simple, within the meaning of the law. Real estate deeded to the bank by warranty deed, but in fact for security only, would not be held by title in fee simple.

The bank act (sections 514 and 568 of the General Statutes of 1915, with their amendments) limits the value of the banking house, furniture and fixtures which a state bank may own to not more than one-third of its capital stock, now one-third of its capital stock and surplus. The purpose of the limitation was to put a stop to the expenditure of bank

Bank v. Geary County.

funds in the erection and extravagant furnishing of Grecian temples for the housing of state banks. The court is of the opinion the tax law should be construed in connection with this limitation on the capacity of state banks to hold 'real estate, and that no deduction should be made on account of banking house, furniture and fixtures in excess of the limited value. The federal statute (Revised Statutes, § 5137) contains no such limitation on the capacity of national banks, and the corporation law contains no such limitation on the capacity of loan companies. The disability imposed on state banks does not affect them, and they are at liberty to deduct the full value of real estate of the character under consideration. .

The state and federal bank acts limit the length of time that real estate acquired in the ordinary transaction of business may be held. No. deduction can be made on account of real estate held beyond the, prescribed period. At the expiration of such period, real estate should have been either converted into assets, which may not be deducted, or else charged off.

An ingenious argument is made to the effect that under the provisions of subdivision four of the tax law the value of no real estate may be deducted except that into which the original fund derived from payments of subscriptions to capital stock has gone. The argument assumes that the term capital stock was used by the legislature according to its true signification. It has already been shown that the same term used in the concluding portion of the same sentence cannot bear that signification. Since the term was not used with technical accuracy in one part of the sentence, it is not likely the strict meaning was intended in another part. (*Building Co. v. Saline County*, 98 Kan. 732, 734, 160 Pac. 971.) There are two general classes of property reached by taxation, personalty and real estate. These classes are recognized by the tax law. An essentially different system of procedure is employed in the assessment and collection of taxes on each. In valuing the personal property taxed to the stockholder, that is, his shares of stock, the value of all real estate, from whatever funds derived, would necessarily be included. Preferring to tax real estate as real estate, to its owner, the corporation, according to the appro-

priate method of procedure, and not desiring to tax the same value twice, provision was made for deducting from the value of the personalty the included value of real estate.

The People's State Bank of Coffeyville, joined as a defendant in case No. 21,603, but in fact interested on the side of the plaintiff, claims the right to a deduction on account of real estate not located in Kansas. The statute does not provide for such a deduction. The object of the law is to provide revenue to meet the needs of the state government. The command of the law is that real estate, the value of which is deducted from the value of stockholders' shares, "shall be assessed as other lands or lots." This can apply to no real estate except that subject to the tax laws of the state. If the value of real estate outside the state were to be deducted, shares of stock would be taxed at less than their true value, without opportunity to recoup the abatement by taxation of real estate. The value of real estate in another state, owned by a national bank, may not be deducted from the value of shares of stock, unless the deduction be permitted to state banks. In a case which arose in Utah it appeared that a deduction was allowed on account of real estate situated in that state, but not on account of real estate situated in other states. The supreme court of the United States, in disposing of the complaint of a national bank, said:

"While real estate of a bank situated outside of the state of domicil is taxed in the state of its situs, yet the value of such real estate necessarily enters into and is considered in estimating the value of the shares of stock, and to deduct the value of the real estate would, to the extent of such deduction, reduce the real value of the shares, without a compensatory equivalent. (*Commercial Bank v. Chambers*, 182 U. S. 556, 561.)

It is insisted that the state bank should be accorded the same privileges as those corporations which are embraced within the provisions of section 11164 of the General Statutes of 1915. Under that section capital stock is regarded as the equivalent of all the shares of capital stock issued and outstanding (*Building Co. v. Saline County*, 98 Kan. 732, 160 Pac. 971), and is valued just as shares of stock in banks are valued. Capital stock value is considered as representative of all value-producing elements attending the corporate enterprise. (*Gas Co. v. Spaeth*, 83 Kan. 191, 109 Pac. 785.) The value necessarily in-

cludes real estate and chattels which, if the property of an individual, would be listed and taxed in the usual way. If, when the corporation lists its capital stock, it specifies particularly the real estate and the chattels which it owns, and returns such property for taxation in the usual way, the value of such property may be deducted from the value of capital stock, except that real-estate mortgages and chattel mortgages may not be deducted. If it be shown that real estate and personal property situated in another state have been duly listed for taxation there, such property may be deducted. The remainder is the value of the capital stock, for purposes of taxation. Stockholders are not taxed on their shares, and capital stock, valued in the manner described, is taxed as personal property to its owner, the corporation. It has already been shown that this method of taxation is not possible in the case of state banks, because of the necessity to conform the taxation of state banks to the taxation of national banks, and banks and loan or investment companies are expressly excluded from the operation of the section by the provision, "except such companies and corporations as are specially provided for by the statute."

The Interstate Mortgage Trust Company, the appellant in case No. 21,218, also claims the benefit of the privileges conferred by section 11164 of the General Statutes of 1915. The appeal is from an order of the district court of Labette county, in which the company has its principal office, sustaining a demurrer to its petition praying for an injunction against the enforcement of an order of the county board of equalization, which was approved by the tax commission. In its petition the company described itself as a loan company, so that it is embraced within the provision of the tax law placing state banks, national banks, and loan or investment companies in the same class. The provision of the state constitution, requiring a uniform and equal rate of assessment and taxation (Gen. Stat. 1915, § 228), does not forbid the employment of different methods of assessment and taxation for different classes of property. The method of assessing and collecting railroad taxes is radically different from the methods employed in assessing and collecting taxes on every other species of property in the state. (*Gulf Railroad Co. v. Morris*, 7 Kan. 210.)

Shares of stock in domestic corporations are taxed in one way, and shares of stock in foreign corporations in another. (*Hunt v. Allen County*, 82 Kan. 824, 109 Pac. 106.) In the opinion in the case last cited it was said:

"The inequality in this case grows out of the different method provided by the statute for listing and assessing shares in the two kinds of corporations. Of necessity the legislature has adopted several different methods for the assessment of property of different classes and used in different kinds of business. The same rate of taxation was levied upon the plaintiff's property, and the same method of assessment was applied thereto, as is applied to the property of all other citizens similarly situated. So far no Solon has appeared in this or any other state of the Union who could devise a method, or any number of methods, of assessment and taxation for all the various kinds of property which would result in equal taxation in every individual case. As has been said, if absolute equality of taxation is required, there can be no taxation." (p. 828.)

This being true, the claim under consideration reduces to this: Is the classification of loan companies with state and national banks a reasonable classification? The question is answered by the company's petition, in which it stated that its sole and exclusive business is that of making loans on real-estate securities, selling the same, issuing bonds and depositing real-estate securities as collateral therefor, and receiving moneys and securities on deposit for the purchase of real-estate mortgages. It is therefore purely a financial institution, dealing in money, obligations for the payment of money, and securities for such obligations, and as such is clearly in affinity with banks. Although not material to the decision, presumably the institution is within the jurisdiction of the banking department of the state, because of the use of the word "trust" as a part of its corporate name. (Gen. Stat. 1915, § 2403.)

The loan company asserts that double taxation will result unless the value of its real estate situated in the state of Oklahoma be deducted from the value of its shares of stock. The assertion is predicated on a misconception of the tax law. It is said that the tax law provides for the assessment of the capital stock of banks and loan companies. It has been demonstrated above that the tax is not on capital stock, but on shares of stock in the hands of stockholders, and that the two

Bank v. Geary County.

classes of property are distinct in fact, and dissimilar for purposes of taxation. In the opinion in the case of *Bank of Commerce v. Tennessee,* 161 U. S. 134, it was said:

"The capital stock of a corporation and the shares into which such stock may be divided and held by individual shareholders are two distinct pieces of property. The capital stock and the shares of stock in the hands of the shareholders may both be taxed, and it is not double taxation. . . . This statement has been reiterated many times in various decisions by this court, and is not now disputed by any one." (p. 146.)

It is said that taxation of the Oklahoma real estate and taxation of the shares is double taxation. The statute does not tax the Oklahoma real estate. The shares of stock are property of the individual stockholder, which the law requires shall be taxed at their true value. This value includes the value of whatever real estate the corporation owns, the situs of which is wholly immaterial. The loan company is in the situation of a Maryland corporation which desired to deduct the value of New Jersey real estate from the value of the shares of capital stock assessed and taxed to its stockholders. The court of appeals of Maryland disposed of the subject in an opinion which has received universal approval, and from which the following extracts are taken:

"The separate shares of the capital stock of the corporation are authorized to be issued by the charter derived from the state, and are subject to its control in respect to the right of taxation; and every person taking such shares, whether resident or nonresident of the state, must take them subject to such state power and jurisdiction over them. Hence the state may give the shares of stock, held by individual stockholders, a special or particular situs for purposes of taxation, and may provide special modes for the collection of the tax levied thereon. (*State v. Mayhew,* 2 Gill, 487; *National Bank v. Commonwealth,* 9 Wall. 353.) And while it is true, that the shares of the capital stock of the corporation represent the capital stock, and everything of which the capital stock is composed, whether invested in real estate or other kind of property, the *situs* of the investment (other than the real estate of the company situated in this state), is wholly immaterial. . . . The true criterion, as fixed by the statute, is the true value of the stock, without reference to the question where, or in what manner or nature of property or security, the capital stock may be invested. Whether that be invested in real estate, or other property, beyond the jurisdiction of this state, the latter having control over the shares and their true value, the peculiar nature and value of the investment of the capital stock of the corporation, beyond the limits of the state, can form no proper subject for specific deduction or abatement from the true value of the shares of stock, when presented to be assessed

for purposes of taxation. . . . Nor is there anything novel in the principle of such taxation." (*American Coal Co. v. County Comm'rs of Allegany County,* 59 Md. 185, 193, 194.)

The loan company misconceives the meaning and application of the expression, "double taxation." It is not double taxation to tax taxable property within the state once. Shares of stock are taxable property. Real estate in Kansas is taxable property. Real estate in Oklahoma is not taxable property, and is not taxed. Shares of the loan company's stock, reduced in value by the value of the Kansas real estate, are taxed, and the Kansas real estate is taxed. That covers the taxable property within the state just once, and covers nothing more.

"We say that the state in taxing stock may take into account the fact that the property and franchises of the corporation are untaxed, whereas in other cases they are taxed; and we say untaxed, because they are not taxed by the state in question. The real grievance in a case like the present is that, more than probably, they are taxed elsewhere. But with that the state of Alabama is not concerned." (*Kidd v. Alabama,* 188 U. S. 730, 732.)

If the value of the untaxed Oklahoma property were deducted from the value of the shares of stock, a portion of this state's taxable property would escape taxation. Besides this, in this instance all taxable value not derived from tangible property would be wiped out. The loan company listed its capital stock, surplus, and undivided profits at par, $135,015.42. From this sum it deducted the value of its real estate in Kansas, $48,980, and claimed the right to deduct, to the extent necessary to cancel capital stock, surplus, and undivided profits, the value of its Oklahoma real estate, $206,882. With all its faults, the tax law is not so paradoxical.

Because the property taxed by the state of Kansas and the property taxed by the state of Oklahoma are of different kinds and belong to different owners, there is no double taxation, in the invidious sense. It is true that taxes on the corporate property in Oklahoma must be paid from funds which constitute a potential source of dividends to stockholders, and in that sense such taxes are an indirect burden on the stockholders. The burden, however, is not imposed by the laws of the state of Kansas, and is an incidental consequence of the voluntary election of the corporate managers to extend the business of the company beyond the jurisdiction of the state. This

corporation derives its life and all its capacities and powers, including its capacity to employ capital stock, from the state of Kansas. Its shares of stock are valuable personal property, having a lawful situs within the borders of the state, and there is no more occasion for the state to forego taxes on such property than there is for the state of Oklahoma to forego taxes on property situated within its borders.

The loan company argues that if the tax law does not permit deduction of the Oklahoma real estate, it infringes the fourteenth amendment to the constitution of the United States. The argument is predicated on the decision of the supreme court of the United States in the case of *Delaware, L. &c. R. R. Co. v. Pennsylvania*, 198 U. S. 341. The state of Pennsylvania taxed corporations on the value of their capital stock, and the question was whether or not the value of coal, having its situs in another state, could be included in the taxable value of the capital stock of a Pennsylvania corporation. It was held that the value of the coal should be excluded. The supreme court of Pennsylvania recognizes the distinction between property in shares of stock owned by stockholders and property in capital stock owned by the corporation and representing its assets, but declares the legislature of Pennsylvania has made no such distinction. Before the case arose, the supreme court of Pennsylvania had held that a tax on the value of capital stock is simply a tax on the property of the corporation. Some of the decisions to that effect are cited in the opinion of the supreme court of the United States, and there are many others. The supreme court of the United States was bound by the interpretation which the state court had given the state law, and the question was simply one of situs. The tax being a tax laid directly on property, it could not lawfully extend to tangible property outside the jurisdiction of the taxing state. The supreme court of the United States took care to guard its decision from misapplication to cases of the kind presented by the loan company's appeal, by inserting the following discriminatory observation in its opinion:

"Of course, the distinction between the capital stock of a corporation, and the shares into which it may be divided and held by individual shareholders, is borne in mind and recognized, and nothing herein affects that distinction. The question here is simply as to the value of the capital stock with reference to the assessment and taxation upon the cor-

poration itself which issues it, and has nothing to do with the individual shareholder. *Van Allen v. Assessors,* 3 Wall. 573; *Bank of Commerce v. Tennessee,* 161 U. S. 134, 146." *(Delaware, L. &c. R. R. Co. v. Pennsylvia,* 198 U. S. 341, 354.)

The legislature of this state has recognized the distinction here made. The tax law was framed to comply with the decision in the Van Allen case and others of like character, and the tax is not a tax levied against the corporation on account of property which it owns.

Questions are presented by the Dearing State Bank and the Citizens National Bank of Independence with reference to the course pursued in arriving at the sums on which their shares of stock should be taxed. No fraud, or conduct so arbitrary or capricious as to amount to fraud, is made to appear, and the result of the conduct criticized may not be disturbed.

In case No. 21,603 the writ is allowed in part and denied in part. Issuance of the writ will be withheld. In case No. 21,218 the judgment of the district court is affirmed.

---

ABSTRACT OF LAWS.

Sections 1 and 2 of article 11 of the state constitution (Gen. Stat. 1915, §§ 228, 229) read as follows:

"§ 1. The legislature shall provide for a uniform and equal rate of assessment and taxation; but all property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, and personal property to the amount of at least two hundred dollars for each family, shall be exempted from taxation.

"§ 2. The legislature shall provide for taxing the notes and bills discounted or purchased, moneys loaned, and other property, effects, or dues of every description (without deduction), of all banks now existing, or hereafter to be created, and of all bankers; so that all property employed in banking shall always bear a burden of taxation equal to that imposed upon the property of individuals."

Section 11149 of the General Statutes of 1915 reads as follows:

"That all property in this state, real and personal, not expressly exempt therefrom, shall be subject to taxation in the manner prescribed by this act."

Section 11236 of the General Statutes of 1915 reads as follows:

"[1] Stockholders in banks and banking associations and loan and in-

vestment companies organized under the laws of this state or the United States shall be assessed and taxed on the true value of their shares of stock in the city or township where such banks, banking associations, loan or investment companies are located;

"[2] and the president, cashier or other managing officer thereof shall under oath return to the assessor on demand a list of the names of the stockholders and amount and value of stock held by each, together with the value of any undivided profit or surplus;

"[3] and said banks, banking associations, loan or investment companies shall pay the tax assessed upon said stock and undivided profits or surplus, and shall have a lien thereon until the same is satisfied: *Provided*, That if from any causes the taxes levied upon the stock of any banking association, loan or investment company shall not be paid by said corporation, the property of the individual stockholders shall be held liable therefor:

"[4] *Provided further*, That if any portion of the capital stock of any bank or banking association or loan or investment company shall be invested in real estate and said corporation shall hold a title in fee simple thereto, the assessed value of said real estate shall be deducted from the original assessment of the paid-up capital stock of said corporation, and said real estate shall be assessed as other lands or lots:

"[5] *And provided further*, That banking stock or loan and investment company stock or capital shall not be assessed at any higher rate than other property:

"[6] *And provided further*, That the provisions of this act shall apply to all mutual and life insurance companies or associations having assets, accumulations, money or credits, and doing business under the laws of this state:

"[7] *And provided further*, That such assets, money and credits held and under the control of such mutual fire and life insurance companies or associations shall be subject to assessment and taxation."

## Section 514 of the General Statutes of 1915 reads as follows:

"Any five or more persons may organize themselves into a banking corporation, and shall be permitted to carry on the business of receiving money on deposit and to allow interest thereon, giving to the person depositing credit therefor; and of buying and selling exchange, gold, silver, foreign coin, bullion, uncurrent money, bonds of the United States and of the state of Kansas, and bonds and warrants of cities, counties, and school districts in the state of Kansas; of loaning money on real estate, chattel and personal security, at a rate of interest not to exceed the legal rate allowed by law; of discounting negotiable notes and of notes not negotiable, and to own a suitable building, furniture and fixtures for the transaction of its business, of the value not to exceed one-third of the capital of such bank: *Provided*, That nothing in this section shall prohibit such bank from holding and disposing of such real estate as it may acquire through the collection of debts due to it."

23—Kan.—1778

This section was amended by chapter 79 of the Laws of 1917, in particulars not material here.

Section 568 of the General Statutes of 1915 reads as follows:

"Any bank may purchase, hold and convey real estate for the following purposes, but no other: First, such as shall be necessary for the convenient transaction of its business, including its furniture and fixtures, but which shall not exceed one-third of the paid-in capital; second, such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its business; third, such as it shall purchase at sale under judgment, decrees or mortgage foreclosure under securities held by it; but a bank shall not bid, at any such sale, a larger amount than to satisfy its debt and costs. Real estate shall be conveyed under the corporate seal of the bank and the hand of its president or vice president, and cashier or treasurer. No real estate acquired in the cases contemplated in the second and third subsection above shall be held for a longer time than five years. If not sold before the expiration of said five years, it must be sold at private or public sale within thirty days thereafter, or charged off out of the earnings or surplus of said bank."

By chapter 76 of the Laws of 1917 the first subdivision of this section was amended to read:

"First, such as shall be necessary for the convenient transaction of its business, including its furniture and fixtures, but which shall not exceed one-third of the paid-in capital and surplus."

Section 569 of the General Statutes of 1915, which went into effect March 11, 1897, reads as follows:

"Any bank now doing business in this state which owns real estate in excess of fifty per cent of its capital shall reduce its holdings by converting same into cash or other good assets, to an amount not exceeding fifty per cent of its paid-up capital, wtihin one year after the passage of this act."

Section 11164 of the General Statutes of 1915 reads as follows:

"That no person shall be required to include in the list of personal property any portion of the capital stock of any company or corporation which is required to be listed by such company or corporation; but all incorporated companies, except such companies and corporations as are specially provided for by statute, shall be required to list by their designated agent in the township or state [city] where the principal office of said company is kept, the full amount of stock paid in and remaining as capital stock, at its true value in money, and such stock shall be taxed as other personal property; provided, that such amount of stock of such companies as may be invested in real or personal property which, at the time of listing said capital stock, shall be particularly specified and given to the assessors for taxation, shall be deducted from the

amount of said capital stock; provided, that mortgages owned by any such company on property, real or personal, in any other state, shall not be deducted; provided further, that real or personal property in any other state, or county in this state, shall be deducted if it be made to appear that the same has been duly listed for taxation in such other state or county in this state."

Section 5219 of the Revised Statutes of the United States reads as follows:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by nonresidents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed."

Section 5137 of the Revised Statutes of the United States reads as follows:

"A national banking association may purchase, hold, and convey real estate for the following purposes, and for no others:

"First. Such as shall be necessary for its immediate accommodation in the transaction of its business.

"Second. Such as shall be mortgaged to it in good faith by way of security for debts previously contracted.

"Third. Such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings.

"Fourth. Such as it shall purchase at sales under judgments, decrees, or mortgages held by the association, or shall purchase to secure debts due to it.

"But no such association shall hold the possession of any real estate under mortgage, or the title and possession of any real estate purchased to secure any debts due to it, for a longer period than five years."