Ranchmen's Trust Co. v. Duncan.

No. 24,131.

THE RANCHMEN'S TRUST COMPANY AND THE RANCHMEN'S STATE
    BANK, *Appellees*, v. SYLVESTER DUNCAN et al., *Appellants*.

SYLLABUS BY THE COURT.

1. TAXATION—*Trust Company Owning Stock in State Bank on which Taxes
   in Its Behalf Have Been Paid by the Bank—Trust Company Not Entitled
   to Deduction from Its Assessment for Taxation on Account of such Pay-
   ment by the Bank.* Under the statute providing that each national bank,
   state bank and loan and trust company located in this state shall in behalf
   of its respective stockholders return for taxation and pay the taxes on all
   the shares of its stock, where a trust company owns stock in a Kansas
   state bank on which taxes in its behalf as such stockholder have been
   paid by the bank, it is not entitled to a deduction on that account in the
   determination of the amount on which it is to pay taxes for its stockholders,
   but must pay on the full value of all its stock, less any deduction properly
   made by reason of taxes paid on real estate.

2. SAME—*Amount of Tax Statement of Trust Company as Returned Changed
   by Assessor Without Notice.* Where a trust company pays in behalf of its
   stockholders the proper amount of tax it cannot recover a part of the sum
   paid on the ground that the assessor without notice changed the statement
   it had returned to him.

Appeal from Sedgwick district court, division No. 1; THOMAS E. ELCOCK,
judge. Opinion on rehearing reversing opinion of affirmance filed October 6,
1923. (Original opinion filed but not reported.)

*Charles B. Griffith,* attorney-general, *Dennis Madden, John F. Rhodes,
W. C. Ralston,* assistant attorneys-general, *W. T. Blake,* county attorney,
*James A. Conley,* and *I. N. Williams,* both of Wichita, for the appellants.

*Jean Madalene,* of Wichita, for the appellees.

The opinion of the court was delivered by

MASON, J.: The Ranchmen's Trust Company, a Kansas corpora-
tion, owned stock in the Ranchmen's State Bank, of Wichita. As
such stockholder it was compelled to pay taxes on the stock, the
return and payment being made in its behalf by the bank, in
accordance with the statute. (Laws 1919, ch. 306, § 1.) The trust
company in its statement of its capital stock, surplus and undivided
profits made under the statute to aid the assessor in fixing the value
of its shares, deducted the value of the stock it held in the bank—
$56,540. The amount so shown in the statement was increased by
the assessor by adding the sum named—$56,540, and its stock-

holders were required to pay taxes upon the valuation arrived at on that basis. The trust company as the representative of its stockholders (the bank being joined as plaintiff) brings this action to recover the amount paid by it in their behalf because of the increase in the assessment brought about in this way.

1. The legislature can of course, if it sees fit, require a corporation to pay taxes on the property it owns and also require each stockholder to pay taxes on the shares owned by him. The question is not one of power but of intention—the interpretation of the statute, which reads:

"Shares of stock issued by national banks and by state banks and savings banks, or other banking organizations, and by loan and trust companies, located in this state, shall be assessed to the individual shareholders at the place where the particular bank, or loan and trust company is located. The president, cashier or other managing officer of each and every institution of the kind named herein which has issued shares of stock shall furnish to the assessing officer upon demand during the month of March of each year a list of all the shareholders and of the number of shares owned by each shareholder, and the assessing officer shall list to each shareholder for taxation purposes the assessable value of such shares as hereinafter provided. To aid the assessor in fixing the value of such shares the returning officer shall furnish to the assessor under oath a statement correctly showing the amounts of capital stock, surplus and undivided profits as of March first of the current tax year. By undivided profits is meant all earnings of the institution which have not been carried to surplus or paid out in dividends under whatever account carried, whether as undivided profits, exchange, interest, stockholders' account, or other account representing interests of the shareholders. The assessor from such statement shall base his valuation upon the capital, surplus and undivided profits, the latter ascertained as provided herein, unless an investigation shall show incorrect returns, in which case he shall determine what returns should have been made to correspond with the facts disclosed by the investigation and shall revise the returns and use such revised returns as the basis of the assessment: *Provided,* That if any portion of the capital stock of any such institution shall be invested in real estate and the institution shall hold a title in fee simple thereto, the assessed value of said real estate to the extent of one-third of the combined capital and surplus owned as a banking home shall be deducted from the original gross valuation of the shares of stock and such real estate shall be assessed as other real estate; also, there shall be deducted the assessed value of real estate owned by the institution to which it has a fee simple title other than the banking home to the extent of one-third of the combined capital and surplus unless it shall have been owned more than five years, in which event it shall not be deducted; but, the assessed value of real estate owned outside of the state of Kansas shall not be deducted. The net assessment when so ascertained shall be divided among the shareholders proportionately according to the number of shares owned by each

shareholder. Any such institution shall pay the tax assessed upon the shares of stock and shall have a lien thereon until the same is satisfied: *Provided,* That if for any reason the taxes levied upon the shares of stock shall not be paid by the institution, the property of the indivdual shareholders shall be held liable therefor." (Laws 1919, ch. 306, § 1.)

The original section of which this is an amendment was fully discussed in *Bank v. Geary County,* 102 Kan. 334, 170 Pac. 33. The changes since made do not affect the disposition of this case. As there pointed out, the statute recognizes the limitations upon the power of the state with respect to the taxation of national banks and attempts, within the field so restricted, to provide a uniform method for taxing banks, both national and state, and that fact is to be borne constantly in mind in undertaking its construction. (See, also, in this connection *Security Sav. Bank v. Board of Review,* 189 Iowa, 463.) Moreover, inasmuch as the statute classifies Kansas trust companies with banks an intention that they shall receive the same treatment as national banks, so far as practicable, is to be presumed.

The state's power of taxation with respect to national banks is derived from the provision of the act of congress reading at the time this action was begun: "Nothing herein shall prevent all the shares in any association [national bank] from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located." (Rev. St. 5219.)

The matter here involved must be considered in the light of a recent decision which settles the law so far as national banks are concerned in a situation more or less analogous. (*Bank of California v. Richardson,* 248 U. S. 476.) What is there determined with reference to the state's power of taxation with respect to national banks may be thus summarized:

(1) National bank A owns shares of stock in national bank B and also stock in a state bank. National bank A cannot be required to pay taxes on its shares of stock in the state bank because a national bank cannot be subjected to state taxation except as authorized by act of congress, and the federal statute (Rev. St. § 5219) does not give that authority, but permits only the taxing of the stockholders on account of the shares of stock owned by them.

(2) National bank A, however, can be required to pay taxes on

the shares of stock in national bank B which it owns, because the statute cited says that shares of stock in a national bank may be taxed to their owner, and this provision is given effect although the owner happens to be another national bank. (*Bank of Redemption v. Boston,* 125 U. S. 60.)

(3) When national bank A is fixing the total value of all its shares to determine the amount on which its stockholders collectively are to pay taxes it is entitled to deduct from the amount of its assets by which such total is arrived at the value of the shares it holds in national bank B, because otherwise its stockholders as well as itself would be paying taxes with respect to those shares.

The basis of that decision, from which three justices dissented, is thus indicated in the opinion:

"The inclusion of the stock ownership of the California Bank in the Mills Bank [both national banks] as an asset of the California Bank for the purpose of taxing the stockholders of the latter bank was a disregard of the provision as to taxing stockholders fixed by the statute.

"Indeed, it is apparent that the use of the power conferred by the statute to tax the California Bank as a stockholder in the Mills National Bank, and in addition to avail of such stock ownership for the purpose of taxing the shareholders of the California Bank, was but to accept the statute on the one hand, and to exert on the other a power which could have no existence consistently with the statute. To say that the two taxes, the one levied on the bank as a stockholder in the Mills National Bank, and the other levied on the stockholders of the California Bank, were valid because a taxation of different persons, the California Bank on the one hand and the stockholders of the California Bank on the other, serves only to emphasize the plain disregard of the statute which would result from the enforcement of the taxes in question.

"It is undoubted that the statute from the purely legal point of view, with the object of protecting the federal corporate agencies which it created from state burdens and securing the continued existence of such agencies despite the changing incidents of stock ownership, treated the banking corporations and their stockholders as different. But it is also undoubted that the statute for the purpose of preserving the state power of taxation, considering the subjects from the point of view of ultimate beneficial interest, treated the stock interest, that is, the stockholder, and the bank as one and subject to one taxation by the methods which it provided.

"Again, when the purposes of the statute are taken into view, the conclusion cannot be escaped that the transmutation of the stock interest of the California in the Mills Bank, into an asset of the California Bank subject to be taxed for the purpose of reaching its stockholders, is to overthrow the very fundamental ground upon which the taxation of stockholders must rest.

"We do not stop to point out the double burden resulting from the taxation of the same value twice which the assessment manifested, as to do so could add no cogency to the violation of the one power to tax by the one prescribed method conferred by the statute and which was the sole measure of the state authority." (p. 484.)

The dissenting opinion quotes at length from *Van Allen v. The Assessors*, 70 U. S. 573, holding that a state may require the owner of shares in a national bank to pay taxes upon their full value although a part or all of its capital be invested in tax-exempt bonds of the United States, and says:

"In. the first place, the stockholder and the bank are entirely different entities, not merely in form but in substance; and this ought to be sufficient to rebut any inference that would rest upon an assumed identity in order to raise a limitation upon the already moderate scope of the scheme of taxation expressly prescribed. In the second place, the property interest of the stockholder is, in a most substantial sense, different from that of the bank. . . . Thirdly, the distinction has been constantly recognized in the decisions of this court ever since the earliest establishment of the national banks." (pp. 490, 491.)

While the view adopted by the majority of the supreme court is conclusive so far as relates to the taxation of shares in a national bank it does not control the interpretation of the local law as applied to state banks or trust companies. Moreover the federal court was considering the force of an act of congress from which the state derived its authority to act, while we have to do with a local statute concerning the state's inherent power of taxation which extends to all subjects not forbidden. It may be pertinent also to note that a national bank, unlike a state bank or trust company, cannot purchase stock in another similar corporation as an investment, but can acquire it only by way of security or protection against loss, and the law which gave this power to Kansas corporations (Laws 1919, ch. 151, § 1) was enacted at the same session and practically at the same time as the act concerning bank taxation which we are here required to interpret.

When the present case was first submitted the presumption in favor of an intention on the part of the legislature to apply to state banks the same system of taxation it was required to employ in respect to national banks led to a decision upholding the plaintiff's contention. A doubt of the soundness of that view caused the granting of the rehearing which is now under consideration. It is of course highly desirable that the rules of taxation should be the

same in the case of state and national banks, and in a doubtful case a statute should be so construed as to bring about that result. But uniformity in that regard is not always possible. For instance, the amount upon which shareholders in a national bank would otherwise be required to pay is diminished by the assessed value of its building, whatever that may be, while in the case of a state bank the deduction on that account is limited to one-third of its capital and surplus. (*Bank v. Geary County,* 102 Kan. 334, 345, 170 Pac. 33; *State Bank v. State Tax Commission,* ante, p. 267, 217 Pac. 304.)

Stockholders in a corporation (other than a bank or loan and trust company) whose principal office is in Kansas are not required to include the stock in their personal returns to the assessor, the taxation matter being handled entirely through the company, which is authorized to deduct from the amount on which it would otherwise pay in their behalf its investments in any property (other than mortgages) which is specifically taxed. (Gen. Stat. 1915, § 11164.) That provision, however, does not apply to banks and loan and trust companies because they are excluded from its operation by the clause "except such companies and corporations as are specially provided for by the statute." (*Bank v. Geary County,* 102 Kan. 334, 347, 170 Pac. 33.) The act relating to the taxation of state bank stock expressly provides for a deduction on account of separately taxed real estate of the bank. The natural implication that no other deductions were intended must control unless for some strong reason to the contrary. We conclude that the presumption of a legislative purpose to treat state and national banks alike in the matter of taxation does not justify holding stockholders in state banks entitled to the exemption claimed because of a like exemption in the case of national banks required by a federal decision made after the passage of the state law.

It is suggested by the appellant that the matter may be affected by the recent amendment of the federal statute relating to the taxation of national banks. (Ch. 267, 67th Congress, sess. 4, Mar. 4, 1923.) The new act does not appear to limit the force of the California Bank case. It merely liberalizes the taxing power of the states by removing individuals not engaged in banking from the class regarded as competitors of national banks, the purpose being to change the law in that regard as declared in *Merchants Nat. Bank v. Richmond,* 256 U. S. 635.

A suggestion is also made that the stockholders and not the corporation are the persons interested in the refunding of any money that was wrongfully collected, and therefore the plaintiff could not in any event maintain the action. The matter being one in which the company acted for its shareholders—in effect as their trustee—it was competent to maintain the suit in their behalf. (See, upon a related matter, *Hannan v. First Nat. Bank,* 269 Fed. 527.)

2. The plaintiff raises the point that the assessor had no authority to change the statement returned by the trust company, at least without notice, and cites in support of its contention *Gibbons v. Adamson,* 44 Kan. 203, 24 Pac. 51. There the assessor under the facts shown was held to have had no right to add items to the personal property statement made to him, without notice. The situation here presented is quite different. The statement made by the company was not a return of property for taxation. Its purpose was "to aid the assessor in fixing the value of such shares" and the statute contains this provision: "The assessor from such statement shall base his valuation upon the capital, surplus and undivided profits, the latter ascertained as provided herein, unless an investigation shall show incorrect returns, in which case he shall determine what returns should have been made to correspond with the facts disclosed by the investigation and shall revise the returns and use such revised returns as the basis of the assessment." (Laws 1919, ch. 306, § 1.) Moreover the facts upon which the proper amount of tax depended were agreed to and the plaintiff cannot upon a merely procedural ground recover a tax payment which it was under a legal duty to make. (*Life Association v. Hill,* 51 Kan. 636, 644, 33 Pac. 300; *Dutton v. National Bank,* 53 Kan. 440, 461, 462, 36 Pac. 719, 724.)

The judgment is reversed and the cause is remanded with directions to render judgment for the defendants.