No. 28,817.

D. A. VORAN, for Himself and on behalf of 114 Other Persons similarly situated, *Plaintiff*, v. JOHN M. WRIGHT, as County Treasurer of Shawnee County, and O. B. EDDY, as County Clerk, etc., *Defendants*.

(284 Pac. 807.)

Opinion on rehearing filed February 8, 1930. (For original opinion, see 129 Kan. 1, 281 Pac. 938.)

*Clad Hamilton, Donald A. Campbell* and *Frank Flack,* all of Topeka, for the plaintiff.

*Eugene S. Quinton,* of Topeka, for the defendants.

*Chester Stevens,* of Independence, *Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson, C. B. Randall, Bennett R. Wheeler, S. M. Brewster, John L. Hunt,* all of Topeka, *Elmer W. Columbia,* of Oswego, *L. E. Goodrich,* of Parsons, *Willard Brooks, Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers,* all of Wichita, *Frank A. Lutz, A. E. Jordan, Harold N. Jordan,* all of Beloit, and *J. T. Cooper,* of Fredonia, as *amici curiæ.*

The opinion of the court was delivered by

HUTCHISON, J.: This case is now before us on rehearing, the original opinion having been filed November 9, 1929 (*Voran v. Wright,* 129 Kan. 1, 281 Pac. 938). The action was an original proceeding in mandamus brought by D. A. Voran, a stockholder in the Fidelity Saving State Bank of Topeka for himself and for and on behalf of one hundred and fourteen other stockholders in that bank against the county treasurer and county clerk of Shawnee county to compel them to accept and receipt for the tender made by the plaintiff of $1,001.68, as and for the first half of the taxes of all the stockholders of the bank for the year 1928, calculated upon the intangible property tax rate instead of the amount levied and assessed against the stockholders computed on the general tangible property rate of taxation, which tender was made and refused December 19, 1928.

Plaintiff avers as reasons for the issuance of such writ that certain clauses and provisions of chapter 326 of the Laws of 1927, known as the intangible tax law, which attempt to exclude the plaintiff and his fellow stockholders from the benefits and privileges of the act are in violation of the constitution of the United States in taking property without the process of law (Bill of Rights, amendment 14), and in violation of the recent amendment to section 1 of article 11 of the state constitution, if they are to be construed as denying the plaintiff and his fellow stockholders the privilege of

being taxed at the intangible rate provided in the act. Plaintiff further avers that there is unjust, arbitrary, capricious and unreasonable discrimination under the provisions of chapter 326 of the Laws of 1927, in that under a decision of the federal court the stockholders of national banks are relieved of the assessment under the tangible property rate, and also that the act itself relieves certain moneyed corporations and individual citizens engaged in like business as the state bank in which the plaintiff is a stockholder from the burden of assessment and levy under the tangible property rate. Plaintiff further avers that on the 1st day of March, 1928, more than 97 per cent of the personal property of the Fidelity State Bank was invested in intangible securities, entitled otherwise to the intangible rate.

Defendants in their answer to the alternative writ admit they are the officers as alleged, that plaintiff and those for whom he pleads are stockholders as alleged, and that the tender was made as alleged, but deny generally all other allegations of the petition. They especially "deny that they refused to accept said tender so alleged to have been made by the bank in behalf of its stockholders and issue receipt therefor upon certain invalid and unconstitutional provisions of chapter 326 of the Laws of 1927, but did urge and claim that the said plaintiff and his fellow stockholders were, by virtue of the laws of Kansas controlling, to wit, chapter 276 of the Laws of 1925, under legal obligation to pay the sum of $3,021.73, being the half tax claimed and demanded upon the value of said stock computed at the general tangible property rate."

Defendants further aver that the general property tax rate of the city of Topeka for the year 1928 was $3.50 per hundred dollars valuation, and as such was levied and assessed against the plaintiff and his fellow stockholders in the bank as provided by law might be done under the amendment to the constitution, article 11, section 1, and under and pursuant to chapter 276 of the Laws of 1925. Defendants further aver that the bank of which the plaintiff is a stockholder furnished the assessing officer under oath a list of all the stockholders and the number of shares of each and all the information in the requirements set forth in chapter 276 of the Laws of 1925, as a basis for the assessment so made by the assessor, and that according to such information so furnished under said law the correct amount of the first half of the taxes for the year 1928 was $3,021.73, the amount demanded by these defendants when the tender was made and the amount still demanded by them.

The pleadings made an issue of law and no evidence was offered. The shares of stock held by the plaintiff and his fellow stockholders were assessed under the provisions of chapter 276 of the Laws of 1925, which amended and repealed R. S. 79-1101 (Laws of 1919, ch. 306, § 1), and became effective March 17, 1925. The pertinent provisions of this act are as follows:

"Shares of stock issued by national banks and by state banks and savings banks, or other banking organizations, and by loan and trust companies, located in the state, shall be assessed to the individual shareholders at the place where the particular bank, or loan and trust company is located. . . . To aid the assessor in fixing the value of such shares the returning officer shall furnish to the assessor under oath a statement correctly showing the amounts of capital stock, surplus and undivided profits as of March first of the current tax year. . . . The assessor from such statement shall base his valuation upon the capital, surplus, and undivided profits. . . . *Provided,* That if any portion of the capital stock of any such institution shall be invested in real estate and the institution shall hold a title in fee simple thereto, the assessed value of said real estate, to the extent of one-half of the combined capital and surplus, owned as a banking home shall be deducted from the original gross valuation of the shares of stock and such real estate shall be assessed as other real estate. . . . The net assessment when so ascertained shall be divided among the shareholders proportionally according to the number of shares owned by each shareholder."

A careful examination of this act shows that it prescribed the method of assessing shares of stock issued by national and state banks and other banking organizations to the individual stockholders according to the number of shares held by each, based upon the valuation of the capital, surplus and undivided profits of the banking organization less a certain allowance for real estate. Its provisions are limited to matters of assessment and taxation of such shares of stock and it does not enter into the realm of levy or rate of taxation. The only change made by the amendment was the allowance of one-half of the amount of the combined capital and surplus instead of one-third to be deducted from the original gross valuation of the shares of stock for real estate owned by the bank. The act of 1919 in turn was an amendment of chapter 84 of the Laws of 1891, and it in turn an amendment of chapter 34 of the Laws of 1876. The two earlier enactments differ greatly in phraseology from the two later ones, but they outline the same general method of assessing the shares of stock of banks and other moneyed institutions engaged in the same or similar business. The first three of these four laws have frequently been upheld as constitu-

tional and valid, among which decisions are the following: *National Bank v. Fisher,* 45 Kan. 726, 26 Pac. 482; *Dutton v. National Bank,* 53 Kan. 440, 36 Pac. 719; *Bank v. Lyman,* 59 Kan. 410, 53 Pac. 125; *Bank v. Geary County,* 102 Kan. 334, 170 Pac. 33; *State Bank v. State Tax Commission,* 114 Kan. 267, 217 Pac. 304; *Ranchmen's Trust Co. v. Duncan,* 114 Kan. 308, 219 Pac. 523.

A most exhaustive study and complete and thorough discussion of the many features involved in the assessment of the shares of stock of banks and loan and investment companies under the statute of 1891 was made by Justice Burch in the Geary county case above cited. The first paragraph of the syllabus is as follows:

"The tax contemplated by section 11236 of the General Statutes of 1915, relating to taxation of national banks, state banks and loan or investment companies, is a tax on shares of stock in the hands of stockholders, and not a tax on capital stock or assets, the property of the corporation."

Continuing, the opinion points out the method of arriving at the true value of the shares of stock and separates the deductions allowed from those not allowed under the law. It also sets out the reason for this law, and the grouping of national and state banks and other moneyed corporations engaged in like business.

These four successive acts of 1876, 1891, 1919 and 1925 were undoubtedly intended by the several legislatures enacting them to be attempts at literal compliance with the provisions of an act of congress permitting the taxation of the stockholders of national banks. (U. S. Rev. Stat. 5219.)

National banks, being governmental agencies, would not be subject to a tax imposed by the state, and the only way to reach the property of national banks was by an indirect method sanctioned by this act of congress. It is argued that the state could have taxed the shares of stock in national banks without the permission thus granted by congress, but it has been granted with requirements and restrictions, and this state and all others have attempted to comply with the restrictions and terms imposed rather than try to accomplish the same in disregard of such consent, even if it could have been so done.

Instead of taxing the national bank on the valuation of its property, the act authorizes the state to tax its shares of stock against the holders thereof, but the act expressly prescribes that such tax shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the state coming into

competition with the business of national banks. This act is known as section 5219 of the Revised Statutes of the United States, which was amended in 1923 and again in 1926, and is in part as follows:

"Sec. 5219. The legislature of each state may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several states may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, or (4) according to or measured by their net income, provided the following conditions are complied with:

"1. (a) The imposition by any state of any one of the above four forms of taxation shall be in lieu of the others, except as hereinafter provided in subdivision (c) of this clause.

"(b) In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks: *Provided,* That bonds, notes or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section."

Our statute, chapter 276 of the Laws of 1925, in an attempt to literally comply with the provisions of this act of congress, has grouped together national banks, state banks, savings banks and other banking organizations and loan and trust companies, and provided for the assessment to be made against the individual shareholders in all such organizations, instead of banks or banking organizations. From this grouping of banking institutions whose stockholders are thus to be assessed and taxed there has arisen in this state a confusion as to the kind of classes for taxation, whether of property or of owners thereof, especially under the amendment of 1924 to section 1 of article 11 of the Kansas constitution, which is as follows, the amendment consisting of the addition of the words in italics:

"The legislature shall provide for a uniform and equal rate of assessment and taxation, *except that mineral products, money, mortgages, notes and other evidence of debt may be classified and taxed uniformly as to class as the legislature shall provide.* All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, and personal property to the amount of at least two hundred dollars for each family, shall be exempted from taxation."

Whatever may have been proper as to classification of owners under this section before the amendment, there can no longer be any question in that regard. A classification as to owners is not

now permissible. The only classification authorized or tolerated by this constitutional provision is that of property, and it makes no difference by whom it may be owned, whether by individual, merchant, manufacturer, banking institution or other corporation. Every classification is now limited to property, and only four kinds of property, viz., mineral products, money, mortgages, notes and other evidence of debt. We recognize that this conclusion is not in harmony with the holding in the case of *Davis-Wellcome Mortgage Co. v. Haynes,* 119 Kan. 1, 237 Pac. 918, and the decision in that case will be overruled in so far as it attempted to recognize or sustain any classification other than that of property. The constitutional provision not only retains the requirement of a uniform and equal rate of assessment and taxation, but adds an exaction with reference to the four kinds of property subject to classification, that they be classified and taxed uniformly as to class as the legislature shall provide, thus imposing upon the legislature the imperative duty of providing for uniformity as to each class whenever and wherever it adopts or creates a classification of property.

At the 1925 session of the legislature, the first session after the adoption of the above constitutional amendment, two acts were passed classifying property for taxation: Chapter 273 included real-estate mortgages only and imposed a registration fee as the only tax to which such mortgages would be subject. The other act, chapter 277, classified money and imposed an annual tax of 25 cents on each $100 of fair cash value of money and credits, and exempted them from all other taxation. One section of this act was amended by chapter 278, which extended the definition of money and credits, but made no other change. Section 2 of chapter 277 contains the following provision:

"*Provided,* That nothing in this act shall be construed to apply to money or credits, as herein defined, belonging to persons or to corporations incorporated under the laws of this state, the taxation of which is otherwise provided for by law, or to any national banking association, or to stock thereof."

It is urged by the defendants that there is no conflict between these acts as to taxation of money and credits, and chapter 276 providing for taxing of shares of stock in banking institutions, which was enacted at the same session and became effective a few days later, but if for any reason there should appear to be any conflict, then the act which became effective later will repeal the former acts by implication, and chapter 276 would be controlling. We think that where different acts affecting the same subject matter

are enacted at the same session of the legislature and take effect about the same time, they should all be considered together to ascertain the real legislative purpose and intent.

"Laws enacted by the same legislature about the same time and concerning the same subject matter, being *in pari materia,* are to be taken and considered together in order to determine the legislative purpose and arrive at the true result." (*In re Hall, Petitioner,* 38 Kan. 670, 17 Pac. 649. See, also, *Railway Co. v. Railway Commissioners,* 85 Kan. 229, 116 Pac. 896; *State, ex rel., v. City of Lawrence,* 98 Kan. 808, 160 Pac. 217.)

But both these chapters, 277 and 278, were repealed and amended at the 1927 session of the legislature by chapter 326, the first and second sections of which are as follows:

"SECTION 1. That for the purpose of this act the term 'money' shall mean and include gold and silver coin, United States treasury notes, bank notes and other forms of currency in common use. The term 'credits' shall mean and include notes, mortgages, foreign stocks, bonds, annuities, royalties, contracts, copyrights, claims secured by deeds and every liquidated claim and demand for money, shares of stock in building and loan associations, other than permanent stock, or other valuable thing, except notes or obligations secured by mortgages on real estate, which mortgages have been recorded in this state, and registration fee or tax paid thereon, and shares of stock upon which taxes are otherwise payable under the laws of this state: *Provided,* That nothing in this act shall be construed to apply to money or credits, as herein defined, belonging to persons, partnerships, associations or corporations, the taxation of which is otherwise provided for by law, or to any national banking association, or the stock thereof, or to money capital in the hands of individual citizens of this state coming into competition with the business of national banks: *Provided further,* That bonds, notes or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking, loan or investment business and representing merely personal investments, not made in competition with the business of national banks, shall not be deemed such moneyed capital.

"SEC. 2. That money and credits as hereinbefore defined are hereby separately classified for taxation purposes and shall hereafter be taxed annually at the rate of five mills on the dollar of the actual value thereof; and hereafter such money and credits shall be exempt from all other taxation."

It will be observed in this act, as well as in chapter 277 of the Laws 1925, there is a definite effort to avoid interfering with the provisions of chapter 276 of the Laws of 1925, which may be considered as exhibiting an inclination to support and sustain the taxing provision of chapter 276. It not only provides that nothing in the act shall be construed to apply to money or credits belonging to persons, partnerships, associations or corporations, the taxation of which is otherwise provided for by law, but also specifically states,

that it shall not apply to national banks and its stockholders, nor to individuals whose moneyed capital comes into competition with the business of national banks. The special effort here manifested to avoid any possible danger of the act being construed as general or as applying to stockholders of national banks, reveals the apparent intention to also keep in harmony with the provisions of section 5219 of the federal statutes. It will be noted that section 5219 does not exact that stockholders of national banks are not to pay a greater rate than stockholders in other banking institutions, but they are not to pay a greater rate than individual citizens whose moneyed capital comes into competition with the business of national banks. Our chapter 276 only reaches corporations having capital stock. The fact that it does not cover the whole field does not affect its validity. A scrupulous compliance with its provisions will not meet the full protection exacted by congress for the stockholders of national banks. Individuals and partnerships do not issue shares of stock, and must therefore be otherwise taxed. Chapter 326 also mentions and exempts corporations the taxation of which is otherwise provided for by law. There are several such, the merchants and manufacturers, for instance (R. S. 79-1001 to 79-1007), and those of a general class provided for in R. S. 79-310. In the Davis-Wellcome case, *supra*, chapter 277 was upheld as constitutional, but the mortgage company was held to be entitled to a deduction from its capital stock of the amount it had invested in real-estate mortgages, by virtue of the mortgage registration act. This act was referred to in the case of *Central Nat. Bank v. McFarland,* 20 F. (2d) 416, where the federal court held there was an unjust discrimination in applying the general rate of taxation to stockholders of the plaintiff national bank, and the intangible and mortgage registration rate to others whose moneyed capital came in competition with the business of the national bank. This case was decided February 2, 1927, in the district court, Kansas first division, and was later affirmed by the circuit court of appeals, eighth circuit, 26 F. (2d) 890. This decision relieves the stockholders of national banks from the obligation of paying the general rate of tax, which relief or exemption is one of the discriminations plead and urged by the plaintiff as unjust, capricious and unreasonable when the plaintiff and his fellow stockholders are expected and required to pay at the general or tangible property rate. But defendants contend that this decision should not be followed because

it attempted to construe and determine the validity of a state statute, which is the special province and duty of the state courts, and that federal courts should accept the construction placed thereon by the state court; and, further, that the state courts are not required to accept and follow such ruling when made prior to any ruling thereon by the state courts. There is no question but that the state courts would have a right to place a different construction upon one of its own laws than that given it by the federal court, and continue to adhere to such construction, but in a matter of this character, would that do away with the discrimination of which complaint is made? The stockholders of the national banks are now relieved from the payment of the general rate of taxation because of discrimination in violation of section 5219 of the federal statutes. They will doubtless continue to adhere to that favorable ruling and, whether right or wrong, their failure to pay would make a discrimination between them and the stockholders of state banks. Besides, the matter determined in the federal court was not wholly the construction of the state statute; it also involved the application of its terms to requirements of an act of congress concerning an instrumentality of the federal government—a national bank.

[1] "A bill to enjoin the collection of taxes assessed against a national bank and against the stockholders on their shares, on the ground that the taxation was double, that the stockholders were not allowed to set off debts against the valuation of their shares, and that the board of equalization illegally increased the assessment, raises the federal question of the validity of the tax, under Rev. St. U. S. § 5219, prescribing the method in which national bank shares may be taxed." (*Sioux Falls Nat. Bank v. Swenson et al.,* 48 Fed. 621, syl. ¶ 1.)

Only a few weeks after this decision in the Central National Bank case was handed down by Judge Pollock, a decision was rendered by the supreme court of the United States, opinion written by Justice Stone, in the case of *First National Bank v. Hartford,* 273 U. S. 548, on appeal from the supreme court of Wisconsin, where a similar statute exempted certain intangible property from taxation, but continued to tax shares of bank stock at the general property rate. It was there held—

"The validity, under Rev. Stats. § 5219, of a state tax on national bank shares at a greater rate than that assessed on other moneyed capital depends upon whether or not the moneyed capital thus favored is employed in such a manner as to bring it into substantial competition with the business of national banks." (Syl. ¶ 2.)

"The requirement of approximate equality in taxation (R. S. § 5219) is not

limited to moneyed capital invested in state banks or to competing capital employed in private banking; it applies whenever capital, substantial in amount compared with the capitalization of national banks, is employed in a business, or by private investors, in the same sort of transactions as those in which national banks engage and in the same locality in which they do business." (Syl. ¶ 3.)

"In this case the evidence shows substantial competition with national banks by untaxed capital in the business of making loans and selling credits, and also by capital of private individuals who, as investors of surplus funds, were engaged in lending money at interest on real-estate mortgages and other evidences of indebtedness, normal to banking." (Syl. ¶ 6.)

On the same day another decision was handed down by the supreme court of the United States in the case of *Minnesota v. First National Bank*, 273 U. S. 561, to the same effect, where by statute the state of Minnesota assessed the shareholders of national banks at 40 per cent of the full value of the stock, but for money and credits only a rate of 3 mills. It was held to be discriminatory and in violation of section 5219. A similar construction was placed by the same court on an Iowa statute where an appeal was taken from the ruling of the supreme court of that state in the case of *First National Bank v. Anderson*, 269 U. S. 341. See, also, *Georgetown Bank v. McFarland*, 273 U. S. 568, where in consideration of a Kentucky statute a different result was reached on the evidence that was before the court, but the decision in the Wisconsin case, above cited, was approved. A similar holding was made by the same court in a recent case from Montana, *Mont. Bank v. Yellowstone County*, 276 U. S. 499, as follows:

"A substantial discrimination against national banks in favor of incorporated state banks resulting from taxation of national bank shares upon a valuation equal to that of the assets of the bank, including bonds and like securities of the United States, while the shares of state banks are not taxed and the state banks themselves are taxed only on the value of their assets after excluding United States bonds and securities, violates Rev. Stats. § 5219." (Syl. ¶ 1.)

"A systematic and intentional omission to tax a material portion of other moneyed capital in the state may render invalid a taxation of national bank shares, under Rev. St. § 5219, equally with a similar omission to tax by legislative enactment." (*Hannan v. First Nat. Bank*, 269 Fed. 527, syl. ¶ 3.)

"While exact uniformity or equality of taxation cannot be expected under any system, capital invested in national bank shares was intended by congress to be placed upon the same footing of substantial equality in respect of taxation by state authority as the state establishes for other moneyed capital in the hands of individual citizens, however invested, whether in state bank shares or otherwise." (*Boyer v. Boyer*, 113 U. S. 689, syl.)

In 1923 the supreme court of Nebraska held a taxing statute of that state which discriminated between stockholders of state banks and private citizens to be invalid for that reason, in the case of State Bank v. Endres, 109 Neb. 753. Shortly thereafter section 5219 was amended by congress and the taxing authorities of Nebraska continued to administer the law on the ground that the amendment of section 5219 in a measure relaxed the restrictions as to stockholders of national banks, and the following is the holding of the supreme court of that state after such amendment:

"The Nebraska revenue law, classifying property as tangible and intangible, and providing that shares of stock in banks, banking associations and trust companies shall be listed at their true value and assessed upon the full mill-rate levy, while other intangible property, with certain exceptions, is required to be listed at its true value and assessed at 25 per cent of the mill-rate levy, is invalid as to national banks, because it conflicted with an act of congress, as then existing, forbidding states to tax shares of stock in national banks at a greater rate than is assessed on other moneyed capital, and with national banks eliminated is, as to state banks, unconstitutional, because it conflicts with our state constitution requiring taxes to be uniform as to class." (Central Nat. Bank v. Sutherland, 113 Neb. 126; syl. ¶ 1.) ·

In harmony with the rules announced and the principles relied upon in the foregoing decisions and many others, we are compelled to conclude that the provisions of chapter 326 of the Laws of 1927 are in violation of the requirements of U. S. Rev. Stat. 5219, in so far as they permit and authorize an unjust discrimination between the stockholders of national banks and other corporations and individual citizens having moneyed capital coming into substantial competition with the business of national banks.

We further conclude that the privilege accorded a mortgage company by the ruling in the Davis-Wellcome Mortgage Co. case, supra, to deduct from its capital stock the real-estate mortgages owned by it that have been registered under the provisions of chapter 273 of the Laws of 1925, is a discrimination between such mortgage company and the stockholders of a state bank and such an unfair and unreasonable discrimination as to justify plaintiff stockholders in objecting thereto and complaining thereof.

It is not seriously contended by anyone that shares of stock are within the definition given in the statute of money or credits, neither do they come under the heading of notes or other evidence of debt. They simply represent the proportionate interest of the holder in the earnings and the final distribution of the assets of the company,

and not a distinct title to the money or property of the company. (7 R. C. L. 304.)

Plaintiff contends that chapter 326 of the Laws of 1927 is unconstitutional because it violates the requirement of section 1, article 11, of the constitution of Kansas in that the kind of property therein classified is not taxed uniformly as to class, and that some owners of such property are deprived of and denied the benefit of the intangible rate thereunder.

The chapter under consideration only attempts to include money and credits in the class with which it deals. If under the provisions of this act money and credits are not classified and taxed uniformly as to class, if there exists any favoritism or discrimination in the taxation thereof, the law is unconstitutional. It should not be difficult to determine whether or not the rate is "uniform and equal," and whether or not all money and credits are "classified and taxed uniformly as to class."

Judge Brewer expressed the judgment of this court in 1884, when the only requirement was that the rate be uniform and equal, that the law taxing cattle driven into the state for grazing purposes after the 1st of March and before the 1st of December, when it did not tax all other property coming into the state between those dates, was not constitutional. (*Graham v. Comm'rs of Chautauqua Co.*, 31 Kan. 473, 2 Pac. 549.) In 1887 it was held by this court in *M. & M. Rly. Co. v. Champlin, Treas.*, 37 Kan. 682, 16 Pac. 222, that a distinction made in the taxation of property in the township belonging to residents and nonresidents was unconstitutional and void. The same conclusion was reached in *In re Page*, 60 Kan. 842, 58 Pac. 478, concerning an act making a distinction for purposes of taxation between the property of licensed and nonlicensed insurance companies in the state. In *Hamilton v. Wilson*, 61 Kan. 511, 59 Pac. 1069, a law taxing judgments, exempting those secured by mortgage, was held invalid. In the case of *Wheeler v. Weightman*, 96 Kan. 50, 149 Pac. 977, the former mortgage registration act was held unconstitutional before the constitutional amendment of 1924. The following paragraph from the opinion in that case forcibly and clearly defines equality and uniformity.

"The essentials are that each man in city, county and state is interested in maintaining the state and local governments. The protection which they afford and the duty to maintain them are reciprocal. The burden of supporting them should be borne equally by all, and this equality consists in each one contributing in proportion to the amount of his property. To this end all

property in the state must be listed and valued for the purpose of taxation, the rate of assessment and taxation to be uniform and equal throughout the jurisdiction levying the tax. The imposition of taxes upon selected classes of property to the exclusion of others, and the exemption of selected classes to the exclusion of others, constitute invidious discriminations which destroy uniformity." (p. 58. See, also, *Hodgins v. Shawnee County Comm'rs,* 123 Kan. 246, 255 Pac. 46; and *Crosby Bros. Merc. Co. v. Shawnee County Comm'rs,* 128 Kan. 740, 280 Pac. 786.)

Further definitions are unnecessary. The terms used are not technical or professional. They are of common and everyday use.

The act provides that it shall not apply to money and credits belonging to persons, partnerships, associations or corporations the taxation of which is otherwise provided for by law, or to any national banking association or the stock thereof or to moneyed capital in the hands of individual citizens coming into competition with the business of national banks. In other words, all these parties so designated by name or occupation are excluded from the beneficial provisions of this act which all others are permitted to enjoy, viz., a rate of taxation on money and credits of five mills on the dollar. To avoid any possible misconstruction or uncertainty in the matter a second proviso emphasizes the lack of uniformity by enumerating the class of persons and occupations not in competition with the business of national banks whose personal investments shall not be deemed moneyed capital.

Applying this act with its provisos to the facts in the case at bar, we have the plaintiff and his fellow stockholders taxed at the rate of $3.50 per hundred dollars on money and credits, while their neighbors in the same township or ward are taxed at the rate of 50 cents per hundred dollars on the money and credits they possess. In this situation there is only one conclusion that can be reached, which is that such is not a uniform and equal rate of assessment and taxation and is not uniform as to class, as required by our constitution.

In our former opinion we found chapter 326 of the Laws of 1927 unconstitutional and also that there was unjust discrimination between the stockholders of state banks and others in the taxing system prescribed by that chapter and others under which the taxes were imposed, and concluded that the plaintiff and his fellow stockholders should not be required to pay taxes at the general property tax rate, but should be allowed the benefit of the intangible rate.

There may have appeared to have been an element of inconsistency in directing the payment to be made on the basis of a law held

to be unconstitutional, but there was both reason and precedent for it. Where there is found to be a discrimination, there are only two ways to remedy it; one is by bringing those taxed on the lower rate up to the higher, which was not possible in this case, and the other is by bringing those taxed on the higher rate down to the lower on, which others have been paying, even if that lower rate should in itself be invalid. All parties agreed on a liability of the plaintiff up to the intangible point, but differed beyond that point. The plaintiff offered and tendered his taxes to that amount which was found to make his uniform with that of others, and that much he should pay because he had offered to do so and others had done so. In the case of *Bank of Garnett v. Ferris*, 55 Kan. 120, 39 Pac. 1042, it was held:

"If the parties had paid that portion of the tax about which there was no question and such part of the remainder as could be readily ascertained to be a just tax upon a fair valuation, they would have been entitled to an injunction to prevent the collection of the illegal excess." (p. 123.)

In the case of *Bank v. Lyon County*, 83 Kan. 376, 111 Pac. 496, two national banks brought an action to enjoin and restrain the county officers from collecting taxes from them based on an assessment on the basis of 40 per cent of the value of their property while all the real estate of the county was assessed on the basis of 25 per cent of its actual value. The court held the banks should pay as they had offered to do, on the 25 per cent basis, notwithstanding there was no reason or justification for any such valuation to have been made in the first place.

All that has been said in this opinion or was said in the former opinion concerning discrimination and lack of uniformity has been strictly and exclusively applicable to those parts of chapter 326 which are designated as provisos in section 1 of that act. When we in the former opinion held the act to be unconstitutional it was specifically on account of these provisions of discrimination and inequality contained in the latter part of section 1. It has been suggested on rehearing that this objectional part of section 1 be eliminated from the rest of the act, if it can be done without destroying the general purpose and design of the act. The whole purpose of these added provisions seems to have been to exempt and exclude certain taxpayers from the rights and privileges of the act, and the effect of the elimination of such provisions would tend to make the act applicable to taxpayers generally, which instead of destroying the

purpose and intent of the act would leave the application thereof general and without these exceptions. Exemptions to the application of an act, however appropriate in themselves, are not essential parts of the act. We think these objectional parts, which are severable and are merely exceptions to the general application of the act, can in this case be eliminated from the act and stricken out of it without in any way injuring or destroying the general design or purpose of the act, and with such portions stricken out, we know of no good reason why the act should not be held constitutional. We therefore find the provisos contained in the latter part of section 1 of chapter 326 of the Laws of 1927 to be invalid and unconstitutional and the remainder of the act, with these portions eliminated, we find to be valid and constitutional. This segregation was authorized and apparently anticipated by the legislature at the time the law was enacted, as indicated by the inclusion therein of section 11, which is as follows:

"That if any section, clause, sentence, paragraph, part or provision of this act shall be found invalid by any court, it shall be conclusively presumed that this act would have been passed by the legislature without such invalid section, clause, sentence, paragraph, part or provision, and the act as a whole shall not be declared invalid by reason of the fact that one or more sections, clauses, sentences, paragraphs, parts or provisions may be found invalid by any court."

In 6 R. C. L. 121 it is stated:

"It is a fundamental principal that a statute may be constitutional in one part and unconstitutional in another part, and that if the invalid part is severable from the rest the portion which is constitutional may stand while that which is unconstitutional is stricken out and rejected."

This court, in the case of *State, ex rel., v. Hilty,* 97 Kan. 91, 154 Pac. 214, has sanctioned and approved such a course in separating and excluding the objectionable and invalid parts or portions of an act and retaining the balance as constitutional.

"This invalid provision is not such an integral portion of the whole law as to be inseparable; . . . and this does not violate the legislative intent or impair the efficacy of the law." (*Harrod v. Latham,* 77 Kan. 466, syl. ¶ 3, 95 Pac. 11. See, also, *Hardy v. Kingman County,* 65 Kan. 111, 68 Pac. 1078; *State, ex rel., v. Howat,* 107 Kan. 423, 191 Pac. 585; *State v. Howat et al.,* 116 Kan. 412, 227 Pac. 752.)

As stated in the former opinion, this decision is not intended to affect the administration of any of the other taxing laws mentioned and considered in this opinion, and to that number might properly be added chapter 327 of the Laws of 1927, known as the secured-debts act.

We have attempted to consider in this opinion all the instances of discrimination and lack of uniformity that have been brought to our attention, but we may not have commented on every such feature suggested along these lines, and we realize other instances and features in the same connection may have been entirely omitted, the discovery and development of which might in the future call for further consideration along the same general lines.

A very interesting and plausible method of proportionate valuations of the assets of banking institutions in computing the amount to be assessed and taxed to the stockholders thereof, by giving them the benefit of the intangible law, the mortgage-registration act and the secured-debt law, has been skillfully worked out and presented to the court on this rehearing, but we deem the application of such an apparently logical and generally inclusive method to be more in the nature of an administrative duty than judicial.

We conclude, as we did in the former opinion, that the plaintiff and his fellow stockholders should not be required to pay taxes at the general-property or tangible rate, but should be allowed the benefit of the intangible rate of taxation.

The writ is allowed.

HARVEY, J. (dissenting in part): My views can best be expressed in a separate opinion. The principle ruled upon in syllabus 2 of the court's opinion is better stated from another viewpoint, *i. e.:* A state is not authorized to tax the shares of stock of national banks at a rate greater than other moneyed capital in the hands of its individual citizens which is used by them in competition with the business of national banks.

I regard syllabus 3 as an erroneous statement of the law. The federal statute (Rev. Stat. 5219) does not provide how the state shall tax the "moneyed capital" of its citizens. In effect the federal statute says to the states: Tax the "moneyed capital" of your individual citizens as you please, and at any rate you choose, but when you have fixed the rate for such "moneyed capital" the shares of stock of national banks cannot be taxed at a greater rate. Syllabus 4 should have been omitted as not being within the issues of this case. In effect it holds that because domestic corporations taxed under R. S. 79-310 are allowed the benefit of the mortgage-registration law (Laws 1925, ch. 273), and perhaps other benefits, not allowed in computing (under R. S. 79-1101, amended by ch. 276, Laws 1925) the value for tax purposes of the shares of stock of

banks, an unjust discrimination against such shares results. I am not ready to say the statement is incorrect, but these statutes, substantially in their present form on the point here made, have been the law of this state since 1876, and their validity has been sustained either specifically or inferentially by repeated decisions of this court.

As I read syllabus 4, all this is scrambled. Before concurring in so holding I would want the question squarely presented and fully argued. I am confident there is much more to be considered on the question than has been presented by the briefs in this case. More than that, a ruling on this point is not necessary for the decision of the case before us. While plaintiff in the application for the writ in this case mentioned this question, it seems clear to me that it was mentioned only as making weight. The tax as computed and tendered by plaintiff, and which he asks us to require defendants to accept, was not computed on that theory; plaintiff is not seeking to derive any financial benefit of such discrimination—if it exists— and all that was said in the arguments and briefs on this question was for its bearing on the other questions at issue. Syllabi 5 to 9 are in the main correct. It seems to me, however, that the treatment of the validity of chapter 326 of the Laws of 1927 in the opinion lacks something of fullness and accuracy. The validity of this statute must be determined by measuring it with our constitution (§ 1, art. 11). This constitutional provision, so far as this statute is concerned, authorized the legislature to classify two kinds of property: (1) money, (2) notes and other evidences of debt; and to tax the same uniformly as to class. The statute (Laws 1927, ch. 326) attempts to so classify and tax (1) money, and (2) "credits," and defines those terms. So far as it defines, classifies and taxes money, the legislature acted within the constitutional grant of authority. The term "credits" as used in the statute must be construed to be tantamount to the term "notes and other evidences of debt" used in the constitution, or within the meaning of that term, to be within the authority granted to the legislature by the constitution. To the extent, if at all, that the legislature, in defining the word "credits," has gone beyond such constitutional grant of authority, the statute is to that extent unconstitutional. We now examine the definition of the word "credits" as used in the statute to see what parts of it are within the authority granted by the constitution to the legislature to classify and tax ". . . notes and other evidences of debt . . . uniformly as to class."

The statute defines "credits" to mean and include "notes," "mortgages" (other than real-estate mortgages on which the registration fee tax has been paid), "bonds" (but see ch. 327, Laws 1927, as to governmental obligations), "claims secured by deed," "every liquidated claim and demand for money," "or other valuable thing" (necessarily of the same general nature). As to the kinds of property so far enumerated, they are clearly within the meaning of the term used in the constitution. "Credits" is further defined by the statute to mean and include "foreign stock," "contracts," "shares of stock in building and loan associations, other than permanent stock." These kinds of property may be "evidences of debt" or may not; when they do evidence debt they are properly included in the legislative grant of authority; when they do not do so they are not within it. The statute also defines "credits" to mean and include "annuities," "royalties," "copyrights." It is difficult for me to see how any of these can be "evidences of debt"; as to these it would seem the legislature is attempting to tax income. But whatever may have been the legislative view, they are within the constitutional grant of authority to the extent only that they are "evidences of debt."

The statute then provides (§ 1, first proviso) that the act shall not apply "to any national banking association or the stock thereof." The statute could not have been made to apply to that kind of property if the legislature had attempted to so apply it, for the reason that the constitution did not authorize the legislature to separately classify and tax that kind of property, it not being property of a kind which is included within the meaning of any of the terms (1) mineral products, (2) money, (3) mortgages, (4) notes and other evidences of debt, named in the constitution. The only virtue of putting this in the statute is that it clearly shows a legislative purpose not to include that kind of property in the provisions of the statute. The other portions of the first and second provisos to section 1 show a legislative purpose to further classify "money" and "credits" with respect to the persons who own and use it. This clearly is not within the constitutional grant of legislative authority. These provisions, therefore, are unconstitutional and void. The result is, the statute applies to all money and notes and other evidences of debt, as defined in the statute (when some of the statutory terms are properly construed) without regard to who may own them. And in view of section 11 of the act, the unconstitutional provisions contained therein must be disregarded and

the remainder of the act held valid. On this point I concur in what is said in the opinion of the court, and especially because of the previous holding of this court on similar sections in other statutes.

Rather than to comment further on the opinion of the court I prefer to state my own views of this case as follows:

The question before us is one of discrimination in taxation. Briefly, plaintiff's contentions may be thus stated: That state banks transact substantially the same kind of business as do national banks, and there is no just or legal reason for discrimination in the taxation of their shares of stock. In effect this contention is conceded. Plaintiff further contends that by the force and application of the federal statute (Rev. Stat. 5219), and by reason of the provisions of our constitution (§ 1, art. 11), and our mortgage-registration law (Laws 1925, ch. 273), and our intangible-tax law (Laws 1927, ch. 326), the shares of stock of national banks cannot be taxed at a greater rate than that provided by the intangible-tax law, which is 50 cents per $100 valuation, and that this has been judicially determined by the federal courts in the case of *The Central Nat. Bank v. McFarland*, 20 F. (2d) 416; 26 F. (2d) 890. Plaintiff computed the tax in question at the intangible tax rate and tendered payment of the sum so computed, which defendants refused to accept for the reason that the shares of stock had been taxed at the general-property rate, which was $3.50 per $100 valuation. Defendants contend that the decisions of the federal court in the case just mentioned are void for the want of jurisdiction, and that the interpretation of a statute of this state is a function and duty of this court as distinct from the federal courts. Not caring to discuss questions of procedure, I shall, for the purposes of this opinion only, concede that defendants are correct on both of these points, but even so it does not follow that the federal courts did not point out the proper application of the statutory and constitutional provisions above mentioned. Defendants further contend that the shares of stock of the banks, both state and national, have been assessed as provided by the statutes of this state (Laws 1925, ch. 276), and that taxes have been levied thereon each year at the general-property rate in accordance with our constitution and our statutes, and that this is the only lawful method for the taxation of such shares of stock, hence that there is no discrimination. The question before us therefore narrows down to whether the discrimination exists as contended by plaintiff; for no one contends that such a

gross discrimination was designed, or is permitted, by the constitution and statutes of our state.

Our constitution (§ 1, art. 11) makes it the duty of our legislature to provide "a uniform and equal rate of assessment and taxation," but authorizes the legislature to classify and tax "uniformly as to class" four kinds of property; namely: (1) mineral products, (2) money, (3) mortgages, (4) notes and other evidences of debt. A share of stock in a state or national bank, or in any other corporation, is not any one of these. It is a certificate evidencing the ownership of a unit of a corporate entity. (14 C. J. 388 *et seq.*; *Bank v. Geary County*, 102 Kan. 334, 170 Pac. 33; *Dutton v. National Bank*, 53 Kan. 440, 36 Pac. 719.) It is therefore not property of a kind which our constitution authorizes the legislature to classify for the purpose of taxation, and our legislature has not so attempted to classify and tax it. It necessarily follows that when its value is ascertained it takes the general-property rate. The value of the shares of stock in banks, both state and national, is determined in accordance with chapter 276 of the Laws of 1925 (which is the latest amendment of section 22, chapter 34, Laws 1876), which provides for their assessment. Hence, considering nothing but our constitution and this statute (Laws 1925, ch. 276), the general-property tax rate applies to shares of stock of banks without discrimination between those of state banks and those of national banks.

Deeming itself authorized by our constitution (§ 1, art. 11) to do so, our legislature enacted the mortgage-registration law (Laws 1925, ch. 273), by which a tax is paid on real-estate mortgages when they are filed for record and they are not otherwise taxable; and also passed the intangible-tax law (Laws 1927, ch. 326, being an amendment of chapter 277 of the Laws 1925, as amended by chapter 278 of the Laws 1925), by which money and "credits" (perhaps meaning by that term "notes and other evidences of debt" as used in the constitution), as therein defined were taxed at 50 cents per $100 valuation. The provisions of section 1 of that act, attempting further to classify money and credits with respect to ownership, are not within the grant of authority given to the legislature by our constitution (§ 1, art. 11), and are therefore unconstitutional and void, but this holding by the force of section 11 of the act does not render the remainder of the statute invalid, although some of the other terms used therein need to be judicially construed. The legis-

lature also enacted a law (Laws 1927, ch. 327) classifying and providing for the taxation of obligations of governmental bodies. For the purposes of this opinion I shall assume, as evidently counsel who have appeared in this case have assumed, that our constitution (§ 1, art. 11) authorized the legislature to make the classifications of property, which it sought to make by these statutes, and to determine the rates of taxation therein provided. None of these statutes attempted to separately classify and tax at a rate other than the general-property tax rate the shares of stock of banks or of other corporations. Collectively they did classify and tax, at a rate much less than the general-property tax rate, all of the moneyed capital in the state in the form of money, mortgages on real estate, notes and other evidences of debt, including governmental obligations. While the rate varies on the different kinds of property so classified by the legislature, none of it exceeds 50 cents per $100 valuation. Now, assuming that our legislature was authorized by our constitution to make the classifications of property and to provide different tax rates therefor, as it has done by the mortgage-registration law, the intangible-tax law, and the law for taxing governmental obligations, there is nothing wrong with that scheme of taxation so far as our constitution and statutes are concerned.

We must now consider the force and effect of the federal statute (Rev. Stat. 5219). It is a law supreme when compared with our state statutes, or even our state constitution (U. S. const., art. VI, 2d paragraph). This federal statute (Rev. Stat. 5219) provides the only method by which a state may tax the shares of stock of national banks. This has been definitely determined judicially, and we need not go further into the history of it. That statute, so far as here pertinent, provides that when the state taxes the shares of stock of national banks ". . . the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks. . ." Now when a state, by the provisions of its constitution and statutes, bundles up, as it were, all of the moneyed capital in the hands of individual citizens of the state (including partnerships and corporations other than banks and loan and trust companies), which does, by the use made of it, come into competition with the business of national banks, and classifies such property and taxes it at various rates as to class, none of which rates exceeds 50 cents per $100 valuation, it is clear that to

give force and effect to the federal statute the rate of taxation on the shares of stock of national banks cannot exceed 50 cents per $100 valuation. Any court, state or federal, indeed any individual, giving intelligent consideration to the question, is forced to that conclusion. The result is that the shares of stock of national banks cannot be taxed at a rate greater than 50 cents per $100 valuation. Since the shares of stock in state banks are property of the same kind, class and quality as shares of stock in national banks, it would be an unjust, unreasonable and unlawful discrimination against the shares of stock of state banks to tax them at $3.50 per $100 valuation. That is about all there is to this lawsuit.

As I am writing my own views, a few observations may not be out of place. Since shares of stock of banks are not authorized by our constitution (§ 1, art. 11) to be separately classified for the purpose of taxation, and under the scheme of taxation provided by our constitution and statutes such shares of stock constitute property of a kind which takes the general-property rate of taxation, the discrimination above noted in favor of the shares of stock of national banks and against the shares of stock of state banks is just as great and is just as unreasonable and unlawful a discrimination against all of the property of the state which is assessed and taxed at the general-property tax rate.

In what situation does this leave us? Simply this: Under our present constitution and statutes, and giving force to the federal statute (Rev. Stat. 5219), as we must do, we cannot have a valid tax (that is, one not unlawfully discriminatory) on any property in the state at a rate greater than that which can be lawfully made on the shares of stock of national banks. This, as we have heretofore seen, is measured by the rate provided by our statutes for the taxation of moneyed capital in the hands of individual citizens of the state which comes into competition with the business of national banks, none of which is taxed at more than the intangible tax rate of 50 cents per $100 valuation. We all know, of course, that if no property in the state can be lawfully taxed at more than 50 cents per $100 valuation, the functions, not only of the state but of every subdivision of it, supported in the main by our general-property tax, will be seriously impaired.

How can this situation be remedied? Broadly speaking, it may be done in any of three ways: By (1) changing the federal statute (Rev. Stat. 5219); (2) changing our constitution (§ 1, art. 11), or

our statutes (Laws 1925, ch. 273; Laws 1927, ch..326; Laws 1927, ch. 327), or some of them; or (3) raising the additional necessary funds by methods other than a direct tax on property. Which changes, or combination of them, should be used involves the consideration of questions of economics and statecraft. To determine what should be done comes within the functions of the executive and legislative branches of our government rather than the judicial.