O’CONNELL, Justice.
The Gulf Fertilizer Company, appellant here, filed a complaint in the trial court *271 seeking refund of 1962 intangible personal property taxes paid by it, as agent for its stockholders, on its outstanding capital stock. The principal ground for the relief sought was that the assessment and levy of the taxes was made pursuant to the formula prescribed by Chapter 61-159, Laws of Florida, 1961, which statute was alleged to be unconstitutional.
The appellees filed a motion to strike significant allegations of the complaint. The Chancellor treated the motion to strike as a motion to dismiss and in the order here involved he held the subject statute to be constitutional and dismissed the complaint with leave to amend.
Appellant, because of uncertainty as to the procedure to be followed in obtaining review by this Court of the Chancellor’s order of dismissal, has filed both a petition for writ of certiorari and an interlocutory appeal.
This uncertainty as to whether to proceed by petition for writ of certiorari or interlocutory appeal is understandable. It should be settled now in order to avoid in future litigation duplication of effort caused the appellant here.
Although the subject order was interlocutory in nature, it was rendered in a cause which in final decree would be directly appealable to this Court. Such an •order is reviewable by this Court under that provision of Article V, Section 4(2), Florida Constitution, F.S.A., which reads:
“The supreme court may directly review by certiorari interlocutory orders or decrees passing upon chancery matters which upon a final decree would be directly appealable to the supreme court.” (emphasis added)
However, while the constitution authorizes review of such an order by certiorari F.A.R. 4.2, 31 F.S.A., governing interlocutory appeals, provides for review by interlocutory appeal.
Thus, while the right of review in such a case is not uncertain the method or procedure to be followed in prosecuting the review is not clearly defined. It would in fact appear that one would have a choice of proceeding either by petition for writ of certiorari, as provided in the constitution, or by interlocutory appeal in accordance with F.A.R. 4.2. This was not intended nor is it the result which should prevail.
In adopting F.A.R. 4.2 this Court intended to establish one procedure for .review of interlocutory orders, whether the review be in this Court or the district courts of appeal.
Although the rule authorizes review of such orders in this Court by interlocutory appeal the scope of the review is as in cer-tiorari. Actually, in practical effect there is little if any difference in the scope of review in this type certiorari and in an interlocutory appeal.
This Court has consistently followed F.A.R. 4.2 by entertaining interlocutory appeals from such orders. City of Miami v. Aronovitz, Fla.1959, 114 So.2d 784; Cramp v. Board of Public Instruction, Fla.1960, 118 So.2d 541; Odham v. Foremost Dairies, Inc., Fla.1961, 128 So.2d 586, and Wilson v. Hillsborough County Aviation Authority, Fla.1962, 138 So.2d 65.
We therefore consider this cause on the interlocutory appeal filed herein rather than on the petition for writ of certiorari which is dismissed.
In the future where review is sought by this Court of interlocutory orders in chancery under the authority of the above quoted constitutional provision the review should be prosecuted as an interlocutory appeal under F.A.R. 4.2.
Appellant presents only one question for decision, i.e., is Chapter 61-159, Laws of Florida, 1961 constitutional.
Appellees agree that this is the principal issue but also contend that the appellant *272 taxpayer has not shown that its rights will be adversely affected by the operation of the statute and therefore argue that it cannot question its constitutionality. This contention is without merit. The allegations of the complaint adequately demonstrate that appellant’s rights are sufficiently affected to give it the right to bring this action.
The facts alleged in the complaint necessary to be stated here are simple.
In February 1962, the appellant, as agent for all its stockholders, filed an intangible personal property tax return in which it reported and returned its outstanding capital stock owned by Florida shareholders. The return listed 3,842 shares of stock at a value of $200.00 per share for a total value of $768,400. The return showed that the stock was held by only ten individuals.
Subsequently, appellant was advised by a deputy assessor that the State Comptroller had determined that, as of March 31, 1961 the end of appellant’s fiscal year, its records reflected a capital stock account of $390,000 and earned surplus and undivided profits of $903,202.91 resulting in a total “book value” of $1,293,202.91, or $331.59 per share. Appellant’s stock was assessed on this basis pursuant to Section 199.02 as amended by Chapter 61-159.
Following unsuccessful administrative appeals appellant paid, under protest, the tax levied on the stock and filed requisition for refund pursuant to Section 215.26, F.S.A., which was denied. Thereupon appellant filed its complaint in which it prayed that the increased valuation of said stock be declared void insofar as the valuation on the so called “book value” exceeded the true or full cash value thereof. It also asked that respondents be required to refund any sums found due.
The basic ground alleged for the relief sought was that the portion of Chapter 61-159, supra, which provides the formula for determining value of closely held stock is discriminatory, unconstitutional and void.
As stated earlier, the Chancellor held the statute valid and dismissed the complaint with leave to amend. This appeal followed.
Section 199.02, F.S.A., divides intangible personal property into four classes. Corporate stocks fall into Class B.
Prior to enactment of Chapter 61-159, supra, the only statutory direction as to valuation found in Chapter 199, F.S.A. was that “The tax assessor shall assess all intangible personal property at its full cash value.” Section 199.05, F.S.1959, F.S.A.
Chapter 61-159, supra, as pertinent here, left Section 199.05 undisturbed but amended Section 199.02(2), which deals with Class B intangible property, by adding the following:
“All such Class B intangible personal property shall be taxed at its true taxable value hereinafter set forth, as of January 1 of each year, or as hereinafter provided.
“(a) Valuation of stock, shares or interest.—
“1. Shares of stock of corporations regularly listed on any stock exchange or regularly traded over the counter shall be taxed at the value per share published as the closing value of the previous year.
“2. Shares of stock not listed on any stock exchange or not regularly traded over the counter, which are closely-held and for which no open market exists, shall be taxed at full book-value arrived at by addition of
a. Capital stock,
b. Paid-in or capital surplus,
c. Earned surplus and undivided profits.
Such value shall be deemed the true taxable value, such book value shall be determined as of the close of the corporation’s fiscal year prior to January 1 of each year.”
*273 Appellant contends that the foregoing provision is unconstitutional because the formula prescribed therein does not secure just valuation of closely-held corporate stock and results in discriminatory treatment of such stock.
We find the appellant’s position to be correct.
At the outset we must assume that in prescribing the formula laid out in Chapter 61-159 the legislature did not intend to depart from the traditional concept that all property be taxed at its full cash value. We must also assume that it intended that the application of the formula prescribed would result in a finding of the full cash value of all corporate stocks, both closely-held and those which are listed and traded. This seems apparent for the assessor is required to assess all other intangibles, as well as all other types of property, real and personal at full cash value. Sections 193.11; 199.05 and 200.06, F.S.A.
No attack is made against that portion of the statute dealing with valuation of stocks listed and traded so we will not concern ourselves with it.
The question for decision, then, is whether or not the formula prescribed for determining valuation of closely held corporate stocks is properly designed to result in a finding of their full cash value, the norm or standard which the legislature has prescribed for “just valuation” of property as required by the constitution.
The appellees recognize that this is the issue for in their brief they state that “The test of any valuation formula as applied to intangibles is whether or not it arrives at the true taxable value of the property, that is its full cash value.”
We assume here that the legislature may, for purposes of valuation, sub-classify closely-held stock and stock listed and traded separately. We also assume that the legislature may prescribe a different formula or method of determining the valuation of each sub-class of stock.
Nevertheless, each formula must be so designed that when applied it will produce within reasonable limits the same result i. e., the full cash value of the stock in each sub-class.
In Graham v. City of West Tampa, 1916, 71 Fla. 605, 71 So. 926, this Court said that:
“Valuations for taxation must have a just relation to the real value of the property assessed, and there must be no substantial inequality in valuations in the various kinds and items of property”.
In Root v. Wood, 1945, 155 Fla. 613, 21 So. 2d 133, this Court observed that:
“The test of any formula is not whether it ‘milks’ the taxpayer dry but whether or not it arrives at the ‘true taxable value’ of the intangible.”
This Court in Root v. Wood, supra, squarely held that the “book value” method of valuing closely-held stocks was not an acceptable method because it did not allow consideration of many other elements that affect the value of such stock and therefore did not arrive at full cash value.
The majority of courts in other jurisdictions have reached the same conclusion. See Annotation 107 A.L.R. 1278, and cases discussed therein.
In all cases which hold as this Court did in Root v. Wood, supra, “book value” is recognized as being one of the factors which must be considered in determining the full cash value of those stocks which have no established market value, however, in each it was held that there are many other factors which affect the intrinsic value of such stocks and that a formula which excluded their consideration was not a proper means of determining full cash value, called by that or any other name.
*274 There are several reasons given in support of the decisions holding that book value is not synonymous with or representative of full cash value.
One is the fact that book value is an accounting concept that may or may not have a real relationship to the actual .value of the assets reflected therein.
Another is that corporate stock has value separate and distinct from the value of the assets, either as shown on the books or in actuality. This is so because corporate stock is not evidence of ownership of a pro-rata share of the corporate assets.
Perhaps the most compelling reasons against equating book value with full cash value of closely-held stock is the fact that the value of such stock is influenced, enhanced or diminished, by factors and sources which are not and cannot be reflected on the corporation’s books.
In Root v. Wood, supra, this Court mentioned some of these factors as .being “ * * * ratio of assets to liabilities, funded debt, character of assets, value ,of assets, volume of business, impermanence of the business, attractiveness of the stock to investors, stability of net income from the assets * *
In First National Bank v. Moon, 102 Kan. 334, 170 P. 33, L.R.A.1918C, 986, that court said it was necessary to consider not only all tangible assets but also all “ * * [ijntangible elements of value, rights, privileges, good will, capacity, and opportunity to achieve financial success, results of past business and the outlook for the future >}c * * »
Cooley on Taxation, Vol. 3, Section 986, p. 1977 (4th ed.) also adopts the view that book value is an improper formula. He says that:
“Book value, i. e., value based on . tangible assets and liabilities, is an improper measure of value because it disregards the elements of good will, dividend earning power, ability in management, public confidence, and other intangible features that ordinarily tend to give the stock a selling value in excess of pure book value.”
We fully appreciate the difficulty that assessors have in determining full cash value of closely-held stock. This Court discussed the problem in Root v. Wood, supra. In City of Tampa v. Colgan, 1935, 121 Fla. 218, 163 So. 577, we also recognized that assessors have the same difficulty in assessing real property where there is no established market. We there declared, as we have here, that in determining value for tax purposes it was necessary for the assessors to consider “not only one but all of the influencing factors going to make up intrinsic value.”
The fact that the book value theory would render assessment of closely-held stock much easier cannot justify its approval.
The net result of the differing formulae prescribed in the subject statute is that all intangibles, except closely-held stocks, are required to be assessed at full cash value while the latter are required to be assessed at book value. This is discriminatory and renders the formula invalid.
There is another aspect of the statute which deserves mention.
Under the statute stocks listed and traded are taxed on January 1 of each year at the value published on the closing value of the previous year, but closely-held stocks are taxed on book value “as of the corporation’s fiscal year prior to January 1 of each year.”
In the- instant case the appellant’s fiscal year ends on March 31. Consequently while traded and listed stocks were taxed on their published value at the close of business in the last trading day of 1961, which presumably would be the value until the opening of the first trading day in 1962, appellant’s stocks were taxed on their book value on March 31, 1961, some 9 months prior to the assessment date.
*275 Section 192,04, F.S.A. provides that all property, real and personal, shall be subject to taxation on January 1 of each year. This means that all property within the • same class shall be assessed and its value for tax purposes determined on that same day in each year. This statute was obviously designed to lend uniformity to assessment procedures and to afford equal treatment to all property in a class by guaranteeing that its value for tax purposes would be determined on the same day. The subject portion of the statute, as amended, does not affect the requirement of Section 192.04 that all property shall be subject to taxation and assessed on January 1. However, it effectively destroys the obvious intent thereof by requiring that closely-held stock will he assessed not on its value on January 1, but on its value on the close of the corporation’s fiscal year which conceivably could be a whole year earlier.
As the court said in M & M Woodworking Co. v. Chambers, 217 Or. 161, 339 P.2d 718, “Value or costs entered several months prior to the assessment date could not, of necessity, equal the value on that day.”
There may be occasions in which the value of a stock will be the same at the end of the corporation’s fiscal year and on the next January 1, but it is likely to be pure happenstance. “[A] happenstance good result from a poor method will not validate an assessment so made.” M & M Woodworking Co. v. Chambers, supra.
The tax on intangibles is an ad valorem tax and is necessarily computed upon the value of the intangibles. The assessed value of such property, as in case of all other property must have a reasonable relation to the actual value of the property being taxed as of the time the value is determined in the assessment process.
In this instance the formula prescribed clearly calls for assessing closely-held stock according to its value on a day other than the assessment date'. We think the method prescribed, is invalid for the reason that the formula is not designed to determine value of closely-held stocks on the assessment date.
We recognize and are in sympathy with the effort of the legislature to find an easier, simpler method of determining assessable value of closely-held stocks. Nevertheless, the method prescribed in the statute under attack does not meet the tests by which it must be measured.
We make no effort to suggest an acceptable formula. As this Court said in Root v. Wood, supra:
“It would not be possible to prescribe a formula to determine true taxable value in all cases. That used by the Tax Assessor and the trustee may suffice in many cases but at best any formula will have its imperfections. Many cases will have to be resolved by consideration of the peculiar factors that affect them. The composite judgment of men versed in intangible evaluations, seasoned with common sense, is the safest guide in such cases and will be found to be the best formula in many others.”
Insofar as it applies to closely-held stocks Chapter 61-159 is held to be invalid, which will require that the stock of appellant be assessed under the provisions of F.S. Chapter 199, F.S.A. as it existed prior to its amendment, i. e., at its full cash value rather than at its book value.
The order of the Chancellor is reversed and the cause is remanded for further proceedings consistent herewith.
THOMAS, Acting C. J., and ROBERTS, THORNAL, CALDWELL and HOBSON (Ret.), JJ., concur.