## HOME MILK PRODUCERS ASSOCIATION v. TAX ASSESSOR, et al.

No. 67-18228.

Circuit Court, Dade County.

February 18, 1969.

Talbot D'Alemberte of Scott, McCarthy, Steel, Hector & Davis, Miami, for plaintiff.

Thomas G. Britton, County Attorney, John G. Fletcher and Roy S. Wood, Jr., Assistant County Attorneys, Alan H. Rothstein,

Miami City Attorney and Jack R. Rice, Jr., Assistant City Attorney, for the defendants.

RAYMOND G. NATHAN, Circuit Judge.

*Final judgment:* This civil action of an equitable nature involving the legality of a tax assessment was duly tried before the court upon the issues made by plaintiff's complaint and the answers of the defendants. The court has heard the testimony, reviewed the evidentiary exhibits, considered arguments of counsel and the briefs submitted, and made an independent research of the law. In consideration thereof, the court makes the following findings of fact and conclusions of law.

*Jurisdiction.* Article V, §6(3), Florida Constitution, as implemented by §196.01, Florida Statutes, vests in this court the exclusive original jurisdiction of all cases involving the legality of any tax, assessment or toll. When jurisdiction is properly invoked under such constitutional and statutory provisions, the court is required to inquire into and determine the legality, equality and validity of the particular tax, assessment or toll presented for judicial review.

*Scope of review.* The court's function and the scope of inquiry is limited to legality, equality and validity. The court is without power or authority to assess or levy taxes. This is an administrative function vested in the appropriate taxing authorities. The taxing officials are accorded a wide discretion in making tax assessments; and when tax assessments are made in substantial compliance with the requirements of law, they are clothed with a presumption of correctness. Harbord, Inc. v. Anderson (2d D.C.A. Fla. 1961), 134 So.2d 816.

*Taxpayer's burden.* In order for a taxpayer to successfully challenge a tax assessment, it must be established that there has been an arbitrary, capricious or discriminatory deviation from proper assessing methods, techniques and procedures without regard to actual value or fair market value. An excessive valuation alone is insufficient to establish illegality, unless it is clearly shown to be so grossly excessive as to constitute constructive fraud. Otherwise, illegality must be shown to exist in connection with the assessing procedure. The methods and procedures for assessing and levying ad valorem taxes are prescribed by statute, and such methods and procedures must be substantially observed and followed, or else the assessment will be invalid and a taking of property without due process of law. The issue of illegality involves the method of arriving at the questioned assessment, and under certain circumstances, the amount of the assessment in relation to just valuation.

If it appears that the tax, assessment or toll is contrary to law, the court is authorized to set aside such tax, assessment or toll, or any part thereof. As stated in Overstreet v. Chatlos (2d D.C.A. Fla. 1962), 135 So.2d 870 —

> Our review of the authorities on this subject leads us to the conclusion that the chancellor was well within the jurisdiction delegated to chancery courts by the constitution and the applicable statutes when he found the assessment . . . was arbitrary, excessive and discriminatory and consequently illegal and invalid. He was authorized, under such judicial finding, to strike down the illegal portion of the tax, but no more. In West Virginia Hotel Corporation v. W. C. Foster Co., 101 Fla. 1147, 132 So. 849, the Supreme Court of Florida said:
>
>> "While the courts cannot assess or levy taxes, they can, under this statute, strike down the illegal portion of a tax and leave the remainder intact."

*Tax assessor's duty.* The means and methods prescribed for ascertaining the value of property for taxation purposes must be substantially observed and followed, or else the assessment will be invalid and a taking of property without due process of law. 31 Fla.Jur., *Taxation,* §261, page 147. As stated by the Supreme Court of Florida in Graham v. City of West Tampa, 71 Fla. 605, 71 So. 926 —

> Valuations for taxation must have a just relation to the real value of the property assessed, and there must be no substantial inequality in valuations in the various kinds and items of property that is subject to the tax. The means and methods prescribed for ascertaining the value of property for taxation purposes must be substantially observed and followed, or else the assessment will be invalid and a taking of property without due process of law.

This decision was followed and cited with approval by the court in Gulf Fertilizer Company v. Walden, 163 So.2d 269, 273 (Fla. 1964). Also see C. D. Utility Corporation v. Maxwell, 189 So.2d 643 (Fla.App. 4th 1966).

And in Rayonier Incorporated v. Tax Assessor, 28 Fla.Supp. 65, 89, the court said that —

> Despite the complete good faith and intentions of the tax assessor, the manner in which he arrived at the assessment was not totally compatible with good assessing practices as required by the statutes and opinions of the Supreme Court in Shuler v. Walter, supra [176 So.2d 81], and other cases.
>
> It is to say that when litigation between a taxpayer and his government ensues the assessment must withstand the attack and meet the test of a proper valuation under law and appraising (assessing) principles. To the extent that it doesn't the assessment is stripped of any presumption . . .

When the tax assessor arrives at his assessed valuation of taxable property, the owner thereof is bound by the judgment of the assessor and barred from questioning the assessment by the provisions of §193.12, Florida Statutes — ". . . Unless complaint is made of such assessment and valuation on the day set for hearing complaints and receiving testimony as to the value of any property, real or personal, as fixed by the county assessor of taxes."

When a complaint is timely filed, the taxing officials are mandatorily required to afford to the property owner a hearing on the complaint and to receive testimony as to the value of the property.

*Taxpayer's returns.* The taxpayer in this case filled out tax returns and, mistakenly, sent them to the assessor's office in Broward County. These were returned to the taxpayer who filed them late. Neither the return figures nor the petition for equalization figures were used by the assessor and, since they were merely renderings of book value figures, as requested by the assessor's office, they are not controlling in this case.

*History of the assessment process.* In 1967, a field representative from the assessor's office went to both the Miami and the Perrine locations. These representatives valued the property at $350,000 for the Miami portion and $16,000 for the Perrine portion. Later, the assessor came into possession of a federal income tax return and assessed the property at over $1,500,000. The taxpayer protested, pointing out that this was a consolidated return showing all property in all counties. After attending one meeting of the tax review board (composed of members of the assessor's staff) and two meetings of the board of equalization, the final assessment was $806,000. It does not appear that the tax assessor himself actually participated in the assessment or even reviewed the assessment until after suit was filed in this case.

*Different assessment technique used by assessor for similar property.* It is further apparent from the testimony that the methods of assessment used for personal property differed widely and the field check or the taxpayer's return, disregarded in the instant case, made the sole basis of assessment for other property in Dade County, including dairy property. The county apparently made no effort to obtain accounting data or income tax returns for these other properties so that the method of assessment would be uniform.

*Book value as basis of assessment.* It is the further finding of the court that the sole basis of the assessment by the Dade County tax assessor was through use of the books and records of the plaintiff corporation and that this did not reveal the true market value of the personal property in question. The assessment of machinery

and equipment raises a particular problem and it is apparent that the county's use of rigid accounting concepts rendered the assessment arbitrary and unreasonable in several particulars. Most important, the county allowed only the straight line method of depreciation although that method was never spelled out in any guidelines from the comptroller or otherwise and it was the uncontradicted testimony of the plaintiff's witnesses that this depreciation method did not approximate the actual market value. There was no attempt to determine actual market value or to measure the results of the mechanical depreciation techniques against the market. The reasoning in the Florida Supreme Court case, Gulf Fertilizer Co. v. R. R. Walden, 163 So.2d 269 (Fla. 1964), is equally applicable here — "[B]ook value is an accounting concept that may or may not have a real relationship to the actual value of the assets reflected therein." 163 So.2d at 274.

*Floor under depreciation.* A further inequity in the assessor's approach is that the assessor's office put a 35% floor under all depreciation which tends to discriminate greatly against such enterprises as Home Milk Producers Association which has extremely old equipment, some of it dating back to the 1940s. There seems to be no basis for this other than a letter from an assistant in the state comptroller's office. The inherent weakness in this procedure is obvious and such a discriminatory method of mass assessment cannot be sanctioned under our constitution and statutes.

*Presumption.* The court has heard the county's assertion of a presumption of validity. In this case the court finds that the assessment is illegal and that the plaintiff has carried its burden of proof to overcome any presumption and has presented competent, experienced appraisers who have demonstrated their knowledge of dairy equipment and its value. No attempt was made by the county to use any assessment technique beyond the book value approach, applying straight line depreciation with a floor of 35%. (It is interesting to note that, even under this method, the county overassessed and this was admitted at trial.)

*Testimony as to fair market value.* The only affirmative and direct proof on fair market value before the court is that provided by plaintiff's dairy equipment appraisal witnesses. Particularly impressive was Mr. Calhoun who was qualified by education and experience to appraise the property. None of the defendants' witnesses testified as to fair market value other than as they concluded it to be by use of book value. The admissions of defendants, introduced into evidence, establish that the fair market value of the subject property is unknown to them. Defendants express the view that the fair market value is some unknown amount which

is equal to, or in excess of the assessed valuation arrived at by the former tax assessor.

It is recognized that expert testimony, while strongly persuasive, is not conclusive or binding upon the court. In this action, however, the court is faced with the alternative of no evidentiary basis for determination of the issue of fair market value, if the expert testimony is disregarded. The assessed valuation unilaterally arrived at by the tax assessor's office without regard to the statutory requirements, provides no tenable basis for fair market value on the subject property. Therefore, the court finds for plaintiff on the issue of fair market value.

Accordingly, upon full consideration of the record in this action, after due deliberation, and in view of the foregoing findings of fact and conclusions of law, it is further ordered, adjudged and decreed as follows —

(1) The court has jurisdiction of the subject matter of this action and of the parties hereto.

(2) The equities of this action are with the plaintiff, and the plaintiff has stated in its complaint and maintained by its proofs, facts which entitle it to the relief sought herein.

(3) The just valuation and fair market value of the subject personal property, particularly described in the complaint, as of January 1, 1967, for ad valorem tax assessment purposes is the total sum of $481,350, this being based on the appraisal of Mr. Calhoun.

(4) The 1967 tax assessment of the subject personal property made by the tax assessor and placed on the 1967 tax roll by the defendant taxing officials is illegal, invalid and void, and to the extent that such tax assessment exceeds the fair market value determined above is hereby set aside.

(5) The 1967 ad valorem taxes on the subject personal property shall be based upon the above assessed valuation and the exact amount of the 1967 taxes shall be computed by the defendant tax collector on said assessed valuation and appropriately reflected on the 1967 tax roll.

(6) The tax collector shall refund to the plaintiff all taxes collected by reason of the excessive and illegal assessment.

(7) The court hereby retains jurisdiction of this action for the purpose of enforcing and effectuating the provisions of this final judgment, and to make and enter such supplemental orders as may be necessary and consistent with the accomplishment of the provisions of this final judgment.